STINSON MORRISON HECKER LLP
Attorneys for Debtors and Plaintiff
1201 Walnut Street
Kansas City, MO 64106
Telephone: (816) 842-8600
Facsimile: (816) 691-3495
Mark A. Shaiken, Esq.
W. Dennis Cross, Esq.
Jodi M. Hoss, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x
In re                                :

                                    :    Chapter 11
WORLDCOM, INC., et al.,       :    Case No. 02-13533 (AJG)
                                    :
                                    :    (Jointly Administered)
              Debtors.      :
                                    :
MCI WORLDCOM               :
COMMUNICATIONS, INC. f/k/a    :
WORLDCOM TECHNOLOGIES, INC.,   :

              Plaintiff      :
                                    :
             v.              :    Adversary Proceeding No. 04-04338 (AJG)
                                    :
COMMUNICATIONS NETWORK    :
INTERNATIONAL, LTD.,         :
                                    :
             Defendant     :
-------------------------------------------------------x

## PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS AND MEMORANDUM IN SUPPORT

Plaintiff MCI WorldCom Communications, Inc. ("WorldCom") hereby moves pursuant to Federal Bankruptcy Rule 7012(c) for judgment on the pleadings (a) dismissing CNI's counterclaim in its entirety and (b) in favor of WorldCom on the issue of CNI's liability.

WorldCom instituted this adversary proceeding to recover amounts due and owing from defendant Communications Network International, Ltd. ("CNI") pursuant to the parties' written contract, on a negotiable instrument, and on principles of quantum merit and unjust enrichment. CNI filed an answer and a counterclaim alleging fraud in the inducement, intentional nondisclosure, four counts of breach of an oral contract, and defamation.[1] None of the claims in CNI's Counterclaim can be sustained under applicable law. In addition, CNI in its Answer has not denied, and thus has admitted, the averments made by WorldCom in support of its negotiable instrument, quantum merit and unjust enrichment claims.

Part I of this memorandum will address CNI's Counterclaim. Because federal law provides the exclusive remedy for CNI's allegations of breach of contract, fraud in the inducement and intentional nondisclosure, Counts I through VI of the Counterclaim, which allege only state law claims, should be dismissed pursuant to the federal filed rate doctrine. Counts I through VI should be dismissed for the additional reason that because they are premised on alleged oral agreements and representations that were superseded, and are contradicted, by the parties' written agreements. The defamation claim (Count VII) should be dismissed because it is barred by the statute of limitations and fails to specify any words alleged to be defamatory.[2]

In Part II of this memorandum, WorldCom will ask that the Court enter judgment in WorldCom's favor on the issue of liability because CNI has admitted WorldCom's allegations in support of its negotiable instrument, quantum meruit and unjust enrichment claims against CNI.

---

[1] A copy of WorldCom's complaint in the district court action ("Complaint") is attached as Exhibit A. A copy of CNI's answer and counterclaim in the district court action ("Answer" and "Counterclaim," respectively) is attached as Exhibit B. All pleadings in the district court action have been incorporated by reference in the pleadings filed in this adversary proceeding.

[2] Count VIII (Punitive Damages) does not purport to set forth a separate basis for liability.

## INTRODUCTORY STATEMENT

This adversary proceeding is a continuation of a pre-petition case originally filed by WorldCom on February 14, 2001, in the United States District Court for the Eastern District of Pennsylvania (the "district court action"). WorldCom sought money due from CNI for the provision of telecommunications services. CNI counterclaimed for fraud, intentional nondisclosure, breach of contract and defamation. On April 26, 2001, WorldCom moved to dismiss the Counterclaim pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, arguing that (1) the fraud, nondisclosure and contract claims are barred by the filed rate doctrine and WorldCom's tariffs on file with the Federal Communications Commission ("FCC"), (2) the alleged oral agreement upon which the breach of contract claims are premised was superseded by the parties' written contracts and (3) the defamation claim is barred by the statute of limitations.

The district court did not reach or decide any of those issues. Instead, citing the doctrine of primary jurisdiction, it denied the motion, stayed the action, and referred the issues to the FCC. Memorandum and Order, August 28, 2001 (attached as Exhibit C). Neither party had briefed primary jurisdiction, but in response to WorldCom's motion for reconsideration, CNI argued that the Counterclaim raised issues appropriately resolved by the FCC. The court denied WordCom's motion for reconsideration.

Although it had argued that the issues raised by its Counterclaim were properly referred to the FCC, CNI refused to initiate any proceedings for the FCC to address those issues. See Letter from Alexander P. Starr, Chief of the Market Disputes Resolution Division, Enforcement Bureau, FCC to W. Mark Mullineaux, Counsel for CNI, March 28, 2002 (attached as Exhibit D) at 1 ("Your letter's proposal fails to comply with either the Commission's procedures or the Court Order…. No party in recent memory has expressed any unwillingness or inability to comply

with this requirement").  The FCC therefore advised CNI that it had not "provide[d] a basis on which we can proceed with the Court Order's referral."  Id. at 2.  CNI then advised the FCC that it would seek reconsideration of the district court's order, and the FCC voiced no objection.  See Letter from Mr. Starr to Mr. Mullineaux and Robert A. Griffith, Counsel for WorldCom, May 2, 2002 (attached as Exhibit E).[3]

CNI did not seek reconsideration of the district court's order.  On July 19, 2002, WorldCom filed its answer to CNI's Counterclaim.  WorldCom's petition in bankruptcy was filed July 21, 2002.  CNI filed a claim in the bankruptcy proceeding, attaching the Counterclaim and incorporating it by reference.  WorldCom then initiated this adversary proceeding, in which the parties have incorporated by reference their pleadings filed in the district court action.

## FACTS

WorldCom provides long-distance, voice, data, video and other telecommunications service, and is a common carrier subject to regulation by the FCC.  WorldCom offers telecommunications services to a variety of customers, including resellers such as CNI. Counterclaim ¶ 5.  CNI resells the long-distance services procured from common carriers such as WorldCom to its business and residential customers.  Id. ¶ 6.

In December 1997, CNI and WorldCom executed an Intelenet Agreement which incorporated the provisions of WorldCom's tariffs.  Counterclaim ¶ 9.[4]  In November 1998, the parties executed a Rebiller Agreement which also incorporated the applicable tariffs.  Id. ¶ 16.[5] Eventually, CNI became delinquent in payments owed for telecommunications services received.

---

[3] In light of this history, another referral of this case to the FCC would appear futile.

[4] The Intelenet Agreement is attached as Exhibit A to CNI's Counterclaim in the district court action.

[5] The Rebiller Agreement is attached as Exhibit A to WorldCom's Complaint in the district court action.

Id. ¶¶ 40-42; Complaint ¶¶ 19, 21, 24-26. Pursuant to the Rebiller Agreement and the applicable tariffs, WorldCom terminated services to CNI. Counterclaim ¶ 40.

CNI's Counterclaim alleged fraud in the inducement, intentional nondisclosure, breach of contract and defamation. Most of those claims rely on an alleged "verbal agreement," which CNI defines as "the Contract." Id. ¶ 7. CNI alleged that WorldCom orally promised that CNI could act as a WorldCom reseller and agent, that it could utilize WorldCom's tariffs in all states and that WorldCom would provision CNI's customers at reduced rates. Id. The Counterclaim admits, however, that after this "verbal agreement" was supposedly entered into, the parties executed the written Intelenet Agreement. Id. ¶ 9. CNI also admits that in November 1998 it signed the written Rebiller Agreement. Complaint ¶ 9; Answer ¶ 9; Counterclaim ¶ 16.

CNI alleges that the "verbal agreement" and the Intelenet Agreement were induced by several misrepresentations, which essentially track the alleged "verbal agreement." Thus CNI alleges that WorldCom falsely represented that CNI would be WorldCom's reseller and agent, that CNI could use WorldCom's tariffs, and that CNI would have the same service arrangement it had with its previous carrier. Counterclaim ¶¶ 10, 18. CNI also claims it was induced to enter into those agreements by intentional nondisclosures, which are simply the alleged misrepresentations stated in the negative: thus CNI alleges that WorldCom failed to disclose that it would not treat CNI as a reseller and agent, would not allow CNI to use its tariffs, and would not provide the same services as the prior carrier. Id. ¶ 21.

None of CNI's contract claims allege breaches of either of the parties' written contracts; all of them refer only to "the Contract" (defined as the alleged "verbal agreement"). First, CNI avers that WorldCom breached "the Contract" by failing to provision customers so that they could place calls within 14 days of signing up for service. Id. ¶¶ 24, 25. Second, CNI avers that,

contrary to "the Contract," WorldCom failed to provide rebates, failed to reimburse for switching telephone numbers and charged for taxes. Id. ¶ 27. Third, CNI alleges that WorldCom breached "the Contract" by failing to cooperate in providing the necessary information to allow CNI to bill its customers. Id. ¶ 30. Finally, CNI contends that WorldCom breached "the Contract" by terminating service to CNI's customers and taking them without authorization. Id. ¶¶ 43, 45.

CNI also asserts a claim for defamation, alleging that WorldCom made "statements and communications through conduct" that disparaged CNI's "business reputation and name." Id. ¶ 49. CNI does not quote or otherwise specify any such statements or communications, but the allegations of Count VII refer generally to events that took place in mid-1999. Id. ¶¶ 40, 47, 49.

For reasons discussed below, the Court should enter judgment on the pleadings against CNI on its Counterclaim and in favor of WorldCom on its claim against CNI.

## ARGUMENT

## I.     CNI'S COUNTERCLAIM SHOULD BE DISMISSED

### A.     Standard For Motion For Judgment On The Pleadings

Federal Rule of Bankruptcy Procedure 7012(c) incorporates Rule 12(c) of the Federal Rules of Civil Procedure. In deciding motions for judgment on the pleadings pursuant to Rule 12(c), courts apply the same standard as that applied in deciding motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Oneida Indian Nation v. City of Sherrill, 337 F.3d 139, 152 (2d Cir. 2003). Such motions should be granted if "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." Id. (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002)). In deciding a motion under Rule 12(b)(6), a court accepts as true all material facts alleged by the party opposing the motion. Id.

On a motion for judgment on the pleadings, a court may consider the pleadings and exhibits attached thereto, statements or documents incorporated by reference in the pleadings and matters subject to judicial notice. Prentice v. Appel, 11 F. Supp. 2d 420, 424 (S.D.N.Y. 1998). Tariffs filed by telecommunications carriers are public records of which judicial notice may be taken for this purpose. Lipton v. MCI WorldCom, Inc., 2001 WL 273076, at *2 (D.D.C. 2001) (motion to dismiss).

B.     **Counts I Through VI Are Barred By The Filed Rate Doctrine**

The filed rate doctrine requires that CNI's fraud, nondisclosure and breach of contract claims be dismissed. CNI cannot sue under state law to enforce any "verbal agreement" because the only enforceable terms and conditions of service were those set by WorldCom's filed tariffs. CNI's claims for fraud in the inducement and intentional nondisclosure are similarly barred because they derive from the same conduct alleged as breaches of the alleged "verbal agreement." Finally, the consequential and punitive damages sought in the counterclaim are precluded under the express terms of WorldCom's filed tariffs, which have the force of federal law.[6]

The United States Supreme Court, when faced with similar facts, held that a telephone reseller's claims for breach of contract and fraud were barred by the filed rate doctrine. Central Office, 524 U.S. 214. This Court should reach the same result here.

---

[6] American Tel. & Tel. Co. v. Central Office Tel., Inc., 524 U.S. 214 (1998) ("Central Office"); Lowden v. Simonds-Shields-Lonsdale Grain Co., 306 U.S. 516, 520 (1939) ("Until changed, tariffs bind both carriers and [customers] with the force of law"); ICOM Holding, Inc. v. MCI WorldCom, Inc., 238 F.3d 219, 221 (2d Cir. 2001) (same); Wegoland Ltd. v. NYNEX Corp., 27 F.3d 17, 18 (2d Cir. 1994) (state consumer protection claim barred by filed-tariff doctrine); Carter v. AT&T, 365 F.2d 486, 496 (5th Cir. 1996) ("[A] tariff, required by law to be filed, is not a mere contract. It is the law.").

1.      **The Regulatory Scheme**

   a.      **The Federal Communications Act's Tariff Requirement**

Interstate telecommunications carriers are regulated pursuant to the FCA. See Central Office, 524 U.S. at 216; Kline & Co. v. MCI Comm. Corp., 98 F. Supp. 2d 69, 70 (D. Mass. 2000). The FCA governs "all interstate and foreign communication by wire or radio and . . . all persons engaged within the United States in such communication . . . " 47 U.S.C. § 152(a). As a provider of long distance telephone service, WorldCom is classified as a common carrier under the FCA. See 47 U.S.C. § 153(h).

At all relevant times the FCA required common carriers to file with the FCC a tariff "showing all charges" for each telecommunications service it provides, as well as "all classifications, practices, and regulations affecting such charges." 47 U.S.C. § 203(a).[7] WorldCom was prohibited from providing communications services except pursuant to a filed tariff, and was not allowed to charge, demand, collect or receive a rate other than the rate listed in the applicable tariff. Central Office, 524 U.S. at 221-22 (citing 47 U.S.C. § 203(c)).

   b.      **The Filed Rate Doctrine Bars Claims For Rates And Services Other Than Those Set Forth In The Applicable Tariffs**

The provisions of the FCA cited above were modeled after similar provisions of the Interstate Commerce Act ("ICA"), and the United States Supreme Court has reaffirmed that the filed rate doctrine applicable to the ICA applies to the communications field as well. Central Office, 524 U.S. at 222. This "century-old" doctrine forms the basis of the regulatory scheme for interstate telecommunications carriers. Id. The filed rate doctrine "forbids a regulated entity to

---

[7] All of CNI's claims are based on conduct that occurred prior to August 1, 2001, when tariffing was still required. On August 1, 2001, in accordance with the FCC's "detariffing orders," see In re Policy and Rules Concerning the Interstate, Interexchange Marketplace, 11 F.C.C.R. 20730 (1996); In re Policy and Rules Concerning the Interstate, Interexchange Marketplace, 12 F.C.C.R. 15014 (1997); Common Carrier Bureau Extends Transition Period for Detariffing Consumer Domestic Long Distance Services, 16 F.C.C.R. 2906 (2001), with exceptions not relevant here, WorldCom withdrew its FCC tariff for interstate and international services.

charge rates for its services other than those properly filed with the appropriate federal regulatory authority." Marcus v. AT & T Corp., 138 F.3d 46, 58 (2d Cir. 1998).

Under the filed rate doctrine, the "rate of the carrier duly filed is the only lawful charge and deviation from it is not permitted upon any pretext." Central Office, 524 U.S. at 222 (quoting Louisville & Nashville R.R. Co. v. Maxwell, 237 U.S. 94, 97 (1915)); Cahnmann v. Sprint Corp., 133 F.3d 484, 487 (7th Cir. 1998) ("the filed tariff is the contract between the [parties]."). Further, since "rates do not exist in isolation," the filed rate doctrine applies not only to the rates set forth in the tariff, but also to the "classifications, practices and regulations affecting such charges." Central Office, 524 U.S. at 223 (quoting 47 U.S.C. § 203(a)). Thus, "the tariffs conclusively and exclusively enumerate the rights and liabilities of the contracting parties." Marcus, 138 F.3d at 56 (emphasis in original); see also Central Office, 524 U.S. at 227 ("The rights as defined by the tariff cannot be varied or enlarged by either contract or tort of the carrier."); MCI Telecomm. Corp. v. Ameri-Tel, Inc., 852 F. Supp. 659, 664 (N.D. Ill. 1994) ("The filed rate doctrine embodies the principle that a [customer] cannot avoid payment of the tariff rate by invoking common-law claims and defenses such as ignorance, estoppel, or prior agreement to a different rate.") (quoting Reiter v. Cooper, 507 U.S. 258, 266 (1993)). As a matter of law, a customer is presumed to have knowledge of the filed tariff provisions. Thus, any reliance on representations to the contrary is deemed unreasonable. Katz v. MCI Telecomm. Corp., 14 F. Supp. 2d 271, 275 (E.D.N.Y. 1998); The Miles Smith Family Corp. v. AT & T, Inc., 2000 WL 1678402, *1 (E.D. Cal. 2000).

Strict adherence to the filed rate doctrine is needed to give force to two principles which underlie the FCA. First, courts enforce the filed tariffs to prevent discrimination between customers, consistent with the non-discrimination requirements of the FCA. Second, courts

enforce the filed rates and terms of service to avoid involving themselves in determining the reasonableness of the rates, which is the exclusive province of the FCC. See Central Office, 524 U.S. at 223; Marcus, 138 F.3d at 59.

"The practical effect of the filed rate doctrine is to preclude customers from commencing a judicial action challenging a [carrier's] failure to provide services at a rate other than that set forth in the tariff." Katz, 14 F. Supp. 2d at 274. Because CNI's claims are based on allegations that it was entitled to terms of service and rates different from those set forth in the tariffs, those claims are barred by the filed rate doctrine.

## 2. The Filed Rate Doctrine Bars Counts III Through VI

Counts III through VI of the Counterclaim stem from WorldCom's alleged breaches of a "verbal agreement." Specifically, Count III relates to provisioning of services, Counts IV and V to billing, and Count VI to termination of services.[8] All of these issues were addressed by WorldCom's tariffs; therefore, all four counts are barred by the filed rate doctrine.

The tariffs applicable to this case are WorldCom, Inc. Tariff FCC No. 1 and No. 2.[9] CNI was presumed as a matter of law to have knowledge of the terms of the tariffs. Katz, 14 F. Supp. at 275. In any event, CNI is an experienced and sophisticated telecommunications reseller that admits it knew of the tariffs' existence and executed two written agreements specifically referring to and incorporating the tariffs. Counterclaim ¶ 8. CNI cannot contend reasonably or as a matter of law that it was ignorant of the tariffs' provisions.

---

[8] Count VI purports to state a claim for "taking and attempted taking" as well as breach of contract. However, the same facts are alleged in support of both claims and identical relief is sought. Therefore, the "taking" claim, like the breach of contract claims, is barred by the filed rate doctrine. See Kline, 98 F. Supp. 2d at 72 (the filed rate doctrine is not avoided by artful pleading).

[9] The provisions of Tariffs No. 1 and 2 quoted in this memorandum are attached as Exhibits F and G, respectively. Tariff No. 1 concerns international telecommunications services; Tariff No. 2 relates to interstate telecommunications services.

Because each of CNI's breach of contract claims refers to an issue specifically and exclusively addressed in the tariffs, each is precluded by the filed rate doctrine. First, the tariffs addressed provisioning of service. Tariff No. 2 provided that "[s]ervice is offered subject to the availability of the necessary facilities and/or equipment and subject to the provisions of this tariff."[10] This contradicts the alleged "verbal agreement" that service would be established no later than 14 days after CNI's customers sign up for the service. Second, the tariffs contained provisions relating to rates, charges and taxes. They included numerous tables and lists of rates and charges,[11] and specified the charges, including taxes, for which the customer was responsible.[12] The tariffs, therefore, and not any "verbal agreement," determined the appropriate charges for telecommunication services provided by WorldCom to CNI. Third, the tariffs specified the billing procedures utilized by WorldCom. For instance, Tariff No. 2, ¶ B.6, provided that a customer was billed on a monthly basis. Billing and payment arrangements were also addressed in Tariff No. 1, ¶ 2.6. Finally, the tariffs addressed termination of services. In particular, Tariff No. 2, ¶ B.7.1.1, and Tariff No. 1, ¶ 2.6.2, provided that services may be discontinued because of a customer's nonpayment.

The tariffs also belie CNI's alleged belief that it was to be an agent of WorldCom and could use WorldCom's tariffs. The only provision relating to "agency" is in Tariff No. 2, ¶ B.4.2, appointing <u>WorldCom</u> as the <u>customer's</u> agent in order to establish service. The tariffs allowed the customer (in this case CNI) to resell services, <u>id.</u> ¶ B.2.1, but said nothing about the customer acting as WorldCom's agent. Likewise, both tariffs specified that they contained regulations and

---

[10] Tariff No. 2, ¶ B.2.1.1; Tariff No. 1, ¶ 2.1.2(A) ("All service is subject to the availability of suitable facilities."); <u>see</u> <u>also</u> Tariff No. 1, ¶¶ 1-3 (terms of service); and Tariff No. 2, ¶¶ B.1, B.2 and C (same).

[11] <u>See</u> Tariff No. 1, ¶ 3; Tariff No. 2, ¶ D.

[12] <u>See</u> Tariff No. 2, ¶ B.6; Tariff No. 1, ¶ 2.6.1.

rates applicable to the provision of service "by WorldCom," not by its customers. Tariff No. 1, ¶ 1; Tariff No. 2, Title Page.

Under the filed rate doctrine, the tariffs conclusively and exclusively set forth the rights of CNI and its customers with regard to the provision of services, rates, charges, billing and termination of services. "There is no space between the contract and the tariff." Cahnmann, 133 F.3d at 489; American Transport Lines, Inc. v. Wrves, 985 F.2d 1065, 1067 (11th Cir. 1993) ("Regardless of whether there was any oral agreement between American Transport and Imex, American Transport was required to charge Imex the approved tariff."). Thus, the filed rate doctrine and WorldCom's tariffs preempt any claim based on an alleged "verbal agreement" between the parties.

CNI does not allege that WorldCom breached the tariffs, nor does it seek to invalidate any tariff as unreasonable. Because CNI claims that WorldCom violated rights not found in the tariffs, Counts III through VI fail as a matter of law. The filed rate doctrine and the FCA prohibit the extension of any privileges or rights other than those set forth in the filed tariff. See 47 U.S.C. § 203(c).

The Supreme Court reached the same result in Central Office. In that case, the plaintiff/reseller claimed that it was entitled to faster provisioning and multi-location billing based on guarantees made by the defendant, a telecommunications carrier, although none of the additional services sought by the plaintiff were provided in the tariff. 524 U.S. at 224-26. The Court held that the filed rate doctrine barred the reseller's state law contract claims "for privileges not included in the tariff." Id. at 226.

Counts III through VI of the Counterclaim suffer from the same defect as the plaintiff's claim in Central Office. CNI asserts rights regarding rates, billing, charges and termination of

service, none of which are found in WorldCom's tariffs. To give credence to those supposed rights would be to grant CNI special privileges regarding service that other WorldCom customers did not have. This would violate the anti-discrimination provisions of the FCA, and is precisely the type of claim that the filed rate doctrine is intended to prevent. Counts III through VI should be dismissed.[13]

### 3. The Filed Rate Doctrine Also Bars Counts I And II

Counts I and II of the Counterclaim allege fraudulent misrepresentations and intentional nondisclosures by WorldCom. The alleged misrepresentations (Count I) are (1) that CNI would be WorldCom's reseller and agent, (2) that CNI could use WorldCom's tariff; and (3) that CNI would have the same service arrangement it had with its previous carrier. Counterclaim ¶¶ 10, 18. The alleged nondisclosures (Count II) are the mirror image of the misrepresentations: CNI avers that WorldCom failed to disclose that it would not treat CNI as a reseller, that it would not allow CNI to use its tariffs and that it would not provide the same arrangements as the previous long distance carrier. Id. ¶ 21.

The alleged misrepresentations and nondisclosures in Counts I and II are essentially the same as the alleged "verbal agreement" that forms the basis of Counts III through VI. Because CNI's fraud and intentional nondisclosure claims derive from the alleged breach of WorldCom's

---

[13] Neither of the cases CNI cited in the district court action helps its argument. In MCI Telecommunications, Inc. v. T.A. Communications, Inc., 40 F. Supp. 2d 728 (D. Md. 1999), the court held that the filed rate doctrine did not apply because "TAC alleges that MCI affirmatively denied it the . . . proper rate from the applicable tariff," and that "the ambiguous tariff language was intentionally manipulated to hinder TAC." Id. at 737. In this case CNI bases its claims not on any rights found in the tariffs but on alleged oral statements supposedly granting CNI benefits in addition to those found in the tariffs and in the parties' written contracts. In In re MCI WorldCom, 2000 WL 668491 (Vt. P.S.B. 2000), a hearing officer of the Vermont Public Service Board concluded that the filed rate doctrine "bars all claims, including claims based upon state law, against a carrier where it is alleged that the carrier provided service at prices or terms different from those stated in the carrier's tariff." Id. at *5. The portion of the order cited by CNI dealt only with the "Reseller Billing Problem" arising when a reseller's customer is billed by WorldCom for direct-dialed toll calls. The hearing officer ruled that the filed rate doctrine did not apply to that issue because it did not involve "the price or the terms of service afforded to a willing customer" but rather "whether [WorldCom] has any relationship at all with the [reseller's] customer." Id. at *15. Here, of course, there is no question that CNI was a willing customer with which WorldCom had a direct contractual relationship.

contractual duties, they are also preempted by federal law.  See Central Office, 524 U.S. at 226-27.

The Supreme Court's holding in Central Office makes clear that the filed rate doctrine bars an action based on alleged misrepresentations regarding rates and terms of service.  "[E]ven if a carrier intentionally misrepresents its rate and a customer relies on the misrepresentation, the carrier cannot be held to the promised rate if it conflicts with the published tariff." Id. at 222. Thus the Court held that the reseller's claim for tortious interference with its agreements with its customers was barred because it was "based on [defendant's] refusal to provide [plaintiff] with certain types of service." Id. at 226-27.  A party cannot avoid the filed rate doctrine merely by alleging a tort claim because "[t]he rights as defined by the tariff cannot be varied or enlarged by either contract or tort." Id. at 227; Marcus, 138 F.3d at 59.[14]

Nor can CNI establish that it justifiably relied upon the alleged misrepresentations or nondisclosures.  Because a customer is presumed to have knowledge of the filed tariff provisions, any reliance on representations to the contrary is deemed unreasonable.  Katz, 14 F. Supp. 2d at 275; Miles Smith, 2000 WL 1678402 at *1.  Therefore, an essential element of CNI's fraudulent misrepresentation and intentional nondisclosure claims is absent as a matter of law.

For the above reasons, Counts I and II are barred by the filed rate doctrine and should be dismissed as a matter of law.

---

[14] Even when a tariff states that it does not preclude liability for willful misrepresentations, "the exemption does not operate to allow claims for intentional or fraudulent misrepresentation of rates or services; the tariff 'can no more exempt the broken promise of preference that is willful than it can the broken promise of preference that is unintentional.'" Katz, 14 F. Supp. 2d at 276 (quoting Central Office, 524 U.S. at 228); Miles Smith, 2000 WL 1678402 at *2.

### 4. The Tariffs And The Rebiller Agreement Bar The Relief Sought In The Counterclaim

The damages CNI seeks are not recoverable under either the tariffs or the parties' written agreements incorporating the tariffs. In Counts I through III and V through VII, CNI seeks the recovery of lost profits and damage to its business. In Count IV, CNI seeks reimbursement of customer service and billing expenses it says it incurred because of WorldCom's alleged improper billing. Count VIII, while not setting forth any separate basis for liability, seeks punitive damages.

The tariffs expressly limit WorldCom's liability to customers. Tariff No. 1, ¶ 2.1.3.F, and Tariff No. 2, ¶ B.5.6, provide: "[WorldCom] shall not be liable for any direct, indirect, consequential, special, actual, or punitive damages, or for any lost profits of any kind or nature whatsoever arising out of any defects or any other cause." The tariffs are incorporated by reference in paragraph 1.1 of the Rebiller Agreement, paragraph 9.1 of which repeats the tariffs' limitation on liability in solid capital letters:

> IN NO EVENT WILL EITHER PARTY HERETO BE LIABLE TO THE OTHER PARTY FOR ANY INDIRECT, SPECIAL, INCIDENTAL, OR CONSEQUENTIAL LOSSES OR DAMAGES, INCLUDING WITHOUT LIMITATION, LOSS OF REVENUE, LOSS OF CUSTOMERS, LOSS OF GOODWILL, OR LOSS OF PROFITS ARISING IN ANY MANNER FROM THIS AGREEMENT AND THE PERFORMANCE OR NONPERFORMANCE OF OBLIGATIONS HEREUNDER.

Thus, even if CNI stated cognizable causes of action, all of the relief it requests is specifically precluded by the tariffs and the Rebiller Agreement. CNI's counterclaim should therefore be dismissed in its entirety.

### C. Counts I Through VI Are Barred By The Parties' Written Agreements

#### 1. Counts III Through VI Should Be Dismissed Because The Alleged "Verbal Agreement" Upon Which They Are Premised Was Superseded By Written Agreements

As shown above (Point B.2), the filed rate doctrine and the tariffs' limit on WorldCom's liability bar CNI's Counterclaim. Counts III through VI should be dismissed for the additional reason that the "verbal agreement" upon which those counts depend is null and void.

CNI admits that it entered into the Intelenet Agreement in December 1997, but alleges that it "is not an integrated contract and as such it recognized the verbal agreement between CNI and WorldCom." Counterclaim ¶ 9. The Intelenet Agreement itself, however, which is attached to CNI's Counterclaim, demonstrates that that is not so. Paragraph II states: "This Agreement, including the WorldCom Application for Credit, the Tariffs, and any documents incorporated herein by reference, constitutes the full understanding of the parties and supersedes any prior agreements between the parties relating to local and long distance telecommunications services." Any alleged "verbal agreement," therefore, was superseded and became ineffective upon the signing of the Intelenet Agreement.

The Intelenet Agreement was superseded in turn by the Rebiller Agreement, which was executed in November 1998. The Rebiller Agreement also contained an integration clause. Rebiller Agreement ¶ 15.12. That clause nullified the Intelenet Agreement as well as any prior oral agreements. [15]

---

[15] CNI calls the Rebiller Agreement a "proposed" agreement, stating that it never became a valid agreement because its terms "were offered for 15 days from November 10, 1998 . . . and WorldCom did not give notice to CNI that it accepted those terms until January 29, 1999." Counterclaim ¶ 16. This characterization of the Rebiller Agreement is contrary to the plain language of the contract and to fundamental principles of offer and acceptance. WorldCom offered the terms of the Rebiller Agreement by submitting it to CNI on or about November 1, 1998, and CNI accepted them by signing the agreement on that date and returning it to WorldCom. The Rebiller Agreement provides that the "[t]erms and conditions contained herein will be offered for fifteen (15) days from November 10, 1998." By signing it on November 1, 1998, CNI accepted the offer before it expired, and the document shows that both CNI and WorldCom executed it within 15 days of November 10, 1998. Paragraph 3.2 of the Rebiller

Counts III through VI of the Counterclaim are based on the alleged "verbal agreement," defined as "the Contract" in Counterclaim ¶ 7 and described in Counterclaim ¶ 8. If that "verbal agreement" ever existed, it was superseded by the parties' written contracts. Counts III through VI should therefore be dismissed.

> **2.** **Counts I And II Should Be Dismissed Because The Representations Upon Which They Are Based Are Contrary To The Parties' Written Contracts**

CNI's claims of fraud and intentional nondisclosure (Counts I and II) are barred not only by the filed rate doctrine (Point B.3 <u>supra</u>), but also by "a very simple, very basic, very sensible principle of the law of fraud." <u>Carr v. Cigna Sec. Inc.</u>, 95 F.3d 544, 547 (7th Cir. 1996). That principle is:

> If a literate, competent adult is given a document that in readable and comprehensible prose says x . . . and the person who hands it to him tells him, orally, not-x . . . our literate, competent adult cannot maintain an action for fraud against the issuer of the document. . . . This principle is necessary to provide sellers of goods and services . . . with a safe harbor against groundless, or at least indeterminate, claims of fraud by their customers.

<u>Id.</u> (citations omitted); <u>see</u> <u>also</u> <u>Turner v. Johnson & Johnson</u>, 809 F.2d 90, 97 (1st Cir. 1986) ("where both parties were experienced in business and the contract was fully negotiated and voluntarily signed, plaintiffs may not raise as fraudulent any prior oral assertion inconsistent with a contract provision that specifically addressed the particular point at issue"); <u>Isler v. Texas Oil & Gas Corp.</u>, 749 F.2d 22, 23 (10th Cir. 1984) (tort claims cannot be used to circumvent duties defined by contract).

---

Agreement provides that it is effective when signed by both parties. An amendment to the Rebiller Agreement, which "fully incorporated . . . by reference" the terms of the original agreement, was executed by CNI on January 29, 1999 and by WorldCom on February 4, 1999. A copy of the Rebiller Agreement, including the amendment, is attached to the Complaint.

In this case the parties defined their relationship by contract, first when they entered into the Intelenet Agreement in December 1997 and again when they entered into the Rebiller Agreement in November 1998. Both written agreements are inconsistent with CNI's claims of fraud and intentional nondisclosure. Contrary to CNI's claim that it was to be "a reseller and agent for WorldCom," the Intelenet Agreement provides that WorldCom "will provide WorldCom Intelenet Service . . . subject to . . . the applicable WorldCom tariffs and the local service tariffs . . . ." Intelenet Agreement ¶ I. Similarly, the Rebiller Agreement provides that "WorldCom will provide its WorldOne Option A, 24-month ESP Service . . . to Customer pursuant to WorldCom Inc. Tariff FCC No. 1 and No. 2 and applicable state tariffs." Rebiller Agreement ¶ 1.1. Both contracts, in their introductory paragraphs, define CNI as the "Customer," and both contracts provide that they comprise "the full understanding of the parties." Intelenet Agreement ¶ II; Rebiller Agreement ¶ 15.12.

Both agreements also contradict CNI's claim that it "could use WorldCom's tariffs in all of the 50 states." The Intelenet Agreement provides that the "Operating Company (defined as "WorldCom, Inc. and one or more of its subsidiaries") will provide [its service] subject to . . . the applicable WorldCom tariffs and the local service tariffs of the Operating Company for the applicable state(s)." Intelenet Agreement ¶ I. Similarly, the Rebiller Agreement provides that "WorldCom will provide its . . . service . . . pursuant to WorldCom Inc. Tariff FCC No. 1 and No. 2 and applicable state tariffs." Rebiller Agreement ¶ 1.1. Neither agreement says anything about CNI using WorldCom tariffs to provide service to CNI's customers.

Finally, both written agreements are inconsistent with CNI's claim that it was told it "could have the same arrangements on services and tariffs that it had with Network Long Distance." Both agreements have specific provisions describing the services, the charges and the

billing arrangements to which the parties are agreeing. CNI does not claim that WorldCom breached any of those provisions. To the extent it claims that WorldCom made oral representations that differ from those provisions, the written contracts rather than those alleged oral representations control.

CNI is a sophisticated buyer and seller of telecommunications services, perfectly capable of reading and understanding its written contracts. It cannot base a tort claim on supposed misrepresentations or nondisclosures regarding matters specifically addressed by those contracts. For that additional reason, Counts I and II of the Counterclaim should be dismissed.

### D. Count VII Fails To State A Claim For Defamation And Is Barred By The Statute Of Limitations

CNI's defamation claim is barred by the statute of limitations. "When reviewing a motion to dismiss under Rule 12(b)(6) on statute of limitations grounds, the court conducts a plenary review to determine 'whether the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'" Algrant v. Evergreen Valley Nurseries Ltd. P'ship, 126 F.3d 178, 181 (3d Cir. 1997). Pennsylvania law provides for a one year statute of limitations for defamation claims. 42 Pa. C.S.A. § 5523(1). Although CNI does not specify the alleged defamatory communications, it is apparent that all the conduct CNI complains of took place no later than mid-1999. Counterclaim ¶ 40. The statute of limitations, therefore, expired in mid-2000, well before CNI filed its Counterclaim in April 2001.

In its district court briefing, CNI tried to avoid the one-year statute by recharacterizing its defamation claim as one for "commercial disparagement," to which it argued the general two-year statute of limitations for "other . . . tortious conduct" found in 42 Pa. C.S.A. § 5524(7) applies. It has since been held, however, that the one-year statute of limitation for defamation

also applies to commercial disparagement.  <u>Pro Golf Mfg. Inc. v. Tribune Review Newspaper</u> <u>Co.</u>, 809 A.2d 243, 246 (Pa. 2002).

Even if it were not barred by the statute of limitations, Count VII is insufficient as a matter of law.  To state a claim for defamation, a complaint must allege: "(1) that the communication was defamatory; (2) that the defendant published the communication; (3) that it applied to the plaintiff; (4) that the recipient understood the defamatory meaning of the communication; (5) that the recipient understood that it was intended to be applied to the plaintiff; (6) that the plaintiff suffered special harm as a result of the publication; and (7) that the defendant abused a conditional privilege."  <u>Levin v. Schiffman</u>, 2001 WL 1807922, at *11 (Pa. Com. Pl. 2001) (citing <u>Jaindl v. Mohr</u>, 637 A.2d 1353, 1358 (Pa. Super. 1994) and <u>Suppan v.</u> <u>Kratzer</u>, 660 A.2d 226, 229 (Pa. Commw. 1995)); <u>see also</u> <u>Gross v. United Eng'rs &</u> <u>Constructors, Inc.</u>, 302 A.2d 370, 371 (Pa. Super. 1973) (defamation complaint must allege with particularity "the identity of the person or persons to whom the [allegedly defamatory] statements were made"); <u>Moses v. McWilliams</u>, 549 A.2d 950, 960 (Pa. Super. 1988) (same); <u>Raneri v. Depolo</u>, 441 A.2d 1373, 1375 (Pa. Commw. 1982) (same).  Further, "[a] complaint must, on its face, specifically identify what allegedly defamatory statements were made by whom and to whom."  <u>Ersek v. Township of Springfield</u>, 822 F. Supp. 218, 223 (E.D. Pa. 1993); <u>see</u> <u>Itri v. Lewis</u>, 422 A.2d 591, 592 (Pa. Super. 1980) (complaint for defamation must allege with particularity content of the defamatory statements, identity of persons making such statements and identity of persons to whom statements were made).  Where a "complaint fails to state with any particularity the content of the oral or written statements claimed to have been made," the defamation claim fails as a matter of law.  <u>Moses</u>, 549 A.2d at 960.

CNI's defamation claim fails as a matter of law because it does not identify with particularity the content of any allegedly defamatory statement made by WorldCom, instead alleging only general categories of alleged statements and "communications through conduct." Counterclaim ¶ 49. Because CNI fails to specify any defamatory communication, the Court should dismiss its defamation claim for failure to state a claim upon which relief can be granted.[16]

Count VII is barred by the statute of limitations and is insufficient as a matter of law. It should be dismissed.

## II. WORLDCOM SHOULD BE GRANTED JUDGMENT ON THE PLEADINGS ON ITS NEGOTIABLE INSTRUMENT CLAIM AND ITS CLAIMS OF QUANTUM MERUIT AND UNJUST ENRICHMENT

In the district court action, WorldCom alleged four counts against CNI: Count I — Contract; Count II — Negotiable Instrument; Count III — Quantum Meruit; and Count IV — Unjust Enrichment. Complaint ¶¶ 5-28. In its Answer, CNI admitted some of the allegations of Count I (paragraphs 1 through 18) and denied others. See Answer ¶¶ 1-18. CNI failed to deny any of the allegations of Counts II, III and IV (paragraphs 19 through 28), comprising WorldCom's negotiable instrument claim and its claims of quantum meruit and unjust enrichment. In this adversary proceeding, both parties have incorporated their district court pleadings by reference.

---

[16] CNI also fails to state a claim for commercial disparagement. A claim for commercial disparagement must allege (1) a disparaging statement that is untrue or a disparaging statement of opinion that is incorrect, (2) that defendant intended for the statement to cause pecuniary loss or reasonably should have recognized that pecuniary loss would result, (3) that pecuniary loss did result and (4) that defendant either knew the statement was untrue or acted in reckless disregard of its truth. Eagle Traffic Control v. Addco, 882 F. Supp. 417, 421 (E.D. Pa. 1995); Menefee v. Columbia Broad. Sys., Inc., 329 A.2d 216, 219-20 (Pa. 1974); Restatement (Second) of Torts § 623A (1977). None of the allegations of Count VII adequately identifies any supposedly untrue or incorrect statement, who made it or to whom. Further, CNI does not allege that WorldCom acted with knowledge of falsity or reckless disregard of truth or intended any statement to cause pecuniary loss to CNI, that WorldCom reasonably should have expected pecuniary loss to result from any statement made, or that CNI actually suffered pecuniary loss as a result of any such statement.

Federal Rule of Bankruptcy Procedure 7008(d) provides that "[a]verments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading."  WorldCom's averments in support of its negotiable instrument, quantum meruit and unjust enrichment claims were not denied in the responsive pleading filed in the district court action and were not denied in the responsive pleading filed in this adversary proceeding.  They are therefore admitted.  The Court should therefore grant WorldCom's motion for judgment on the pleadings on the issue of liability for those claims.

## CONCLUSION

For all of the foregoing reasons, CNI's counterclaim should be dismissed and judgment entered for WorldCom on all issues except the amount of damages due to WorldCom.

Respectfully submitted,

BY:   */s/ W. Dennis Cross*
       STINSON MORRISON HECKER LLP
       Attorneys for Debtors and Plaintiff
       1201 Walnut Street
       Kansas City, MO  64106
       Telephone:  (816) 842-8600
       Facsimile:  (816) 691-3495
       Mark A. Shaiken, Esq.
       W. Dennis Cross, Esq.
       Jodi M. Hoss, Esq.

DTMDOCS 1117923v1