UNITED STATES BANKRUPTCY COURT      Not For Publication
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re                        :     Chapter 11
                           :
WORLDCOM, INC., *et al.*,      :     Case No. 02-13533 (AJG)
                           :     (Confirmed Cases)
           Debtors.        :
                           :
------------------------------------------------------------x
                           :
MCI WORLDCOM COMMUNICATIONS, INC., :
f/k/a WORLDCOM TECHNOLOGIES, INC.,   :
                           :
           Plaintiff,       :
                           :
           v.                :     Adv. Proc. No. 04-04338 (AJG)
                           :
COMMUNICATIONS NETWORK       :
INTERNATIONAL, LTD.,          :
                           :
           Defendant.      :
------------------------------------------------------------x

## OPINION REGARDING PLAINTIFF'S MOTION
## FOR SUMMARY JUDGMENT AND DEFENDANT'S MOTION
## FOR LEAVE TO FILE A SUR-REPLY MEMORANDUM

A P P E A R A N C E S

STINSON MORRISON HECKER LLP
Attorney for Plaintiff
1201 Walnut Street
Kansas City, MO 64106

       W. Dennis Cross, Esq.
       Mark A. Shaiken, Esq.
       Jodi M. Hoss, Esq.
          Of Counsel

FLAMM, BOROFF & BACINE, P.C.
Attorney for Defendant
794 Penllyn Pike
Blue Bell, PA 19422

       W. Mark Mullineaux, Esq.

Howard Gershman, Esq.
Of Counsel

ARTHUR J. GONZALEZ
United States Bankruptcy Judge

Before the Court are two motions.  Plaintiff, MCI WorldCom Communications, Inc. ("WorldCom"), moves for summary judgment (the "Motion") against Communications Network International, Ltd. ("CNI") and CNI moves for leave to file a sur-reply memorandum (the "CNI Sur-reply") in opposition to the Motion (the "CNI Motion").[1]

Having reviewed the parties' pleadings and exhibits appended thereto and having held a hearing on this matter on March 6, 2007 (the "Hearing"), the Court grants the Motion in part regarding CNI's breach of a valid and binding contract and denies the Motion in part regarding the alleged amount of damages incurred by WorldCom.  The CNI Motion is granted in part only insofar as it addresses WorldCom's argument that CNI failed to timely dispute certain charges.  The Court denies the CNI Motion in part regarding all other issues raised in the motion.

## I.  BACKGROUND

### A.  FACTS

The background information about WorldCom and its business relationship and litigation with CNI are set out in detail in the Court's earlier opinion.  *See MCI WorldCom Commc'ns, Inc. v. Commc'ns Network Int'l, Ltd. (In re WorldCom, Inc.)*, No. 02-13533 (AJG), Adv. Proc. No. 04-04338 (AJG), 2006 WL 693370, at **1-3 (Bankr. S.D.N.Y. Mar. 13, 2006).  An abbreviated summary will suffice here.

---

[1] The CNI Motion is, in effect, a motion for leave to file a "sur-sur-reply" to the Motion given that the Court granted WorldCom permission to file a sur-reply to CNI's response.

CNI resells, to its own customers, telecommunications services from common carriers like WorldCom.  In December 1997, WorldCom and CNI entered into a written "Intelenet Agreement" which, according to CNI, was eventually deemed inappropriate for the parties' relationship by WorldCom.  In November 1998, CNI provided WorldCom with a copy of the WorldCom Rebiller[2] Service Agreement (the "Rebiller Agreement") signed only by CNI.  On January 29, 1999, WorldCom gave to CNI a copy of the Rebiller Agreement signed by both parties.  On that same day, CNI signed an amendment to the Rebiller Agreement that WorldCom subsequently signed on February 4, 1999.  WorldCom invoiced CNI monthly for services provided pursuant to the Rebiller Agreement.

## B.  PROCEDURAL HISTORY

On February 14, 2001, WorldCom filed suit against CNI in the United States District Court for the Eastern District of Pennsylvania to recover unpaid amounts for telecommunications services (the "Pennsylvania Action").  WorldCom based its claims on theories of contract, negotiable instrument, *quantum meruit*, and unjust enrichment.  CNI answered only the contract claim and counterclaimed for fraud in the inducement, intentional nondisclosure, breach of contract, defamation, and punitive damages.  On July 21, 2002 and November 8, 2002, WorldCom and certain of its direct and indirect subsidiaries commenced cases under the Bankruptcy Code.

Subsequent to WorldCom's bankruptcy petition, CNI filed a timely proof of claim that reasserted its counterclaims in the Pennsylvania Action.  WorldCom objected to the claim and initiated an adversary proceeding against CNI, reasserting the claims in the complaint that WorldCom had filed in the Pennsylvania Action.  CNI filed an answer that

---

[2] As used herein, the words "rebiller" and "reseller" are synonymous.

again only responded to WorldCom's contract claim.  On February 22, 2005, WorldCom

moved for judgment on the pleadings seeking dismissal of all the claims in CNI's

counterclaim.  WorldCom also moved for judgment on the issue of CNI's liability

regarding its claims based on negotiable instrument, *quantum meruit*, and unjust

enrichment, all of which CNI had failed to answer.  CNI moved to file responses *nunc*

*pro tunc* to the negotiable instrument, *quantum meruit*, and unjust enrichment counts of

the complaint and also cross-moved for judgment on the pleadings.

On March 13, 2006, the Court granted WorldCom's motion for judgment on the

pleadings to the extent that CNI's counterclaims were dismissed.  *See In re WorldCom,*

*Inc.*, 2006 WL 693370, at *12.  WorldCom's motion was denied, however, as to CNI's

liability for unpaid services.  *See id.*  The Court also granted CNI's motion to file

responses *nunc pro tunc* to WorldCom's negotiable instrument, *quantum meruit*, and

unjust enrichment claims, and denied CNI's cross-motion for judgment on the pleadings.

*Id.*

On April 26, 2006, CNI filed an answer responding to WorldCom's non-contract

claims.  On May 1, 2006, CNI filed a motion for leave to appeal.  That motion was

denied on December 6, 2006 by the United States District Court for the Southern District

of New York.  On January 1, 2007, WorldCom filed the Motion, which included

WorldCom's Statement of Material Facts As To Which There Are No Genuine Issues To

Be Tried (the "SOF").  CNI's response to the Motion did not specifically controvert the

facts set forth in the SOF in correspondingly numbered paragraphs as required by rules

7056-1(c) and (d) of the Local Bankruptcy Rules for the Southern District of New York.

CNI did, however, annex a declaration (the "First Declaration") from its secretary, Curtis

4

Cooke, which addressed the issues in general.  On February 28, 2007, WorldCom replied to CNI's response (the "WorldCom Sur-reply").  The CNI Motion was filed on March 5, 2007 -- one day before the Hearing -- contemporaneously with a Second Declaration of Curtis Cooke (the "Second Declaration") and a numbered response to the SOF.

### C.  THE PARTIES' CONTENTIONS

#### 1.  The Motion

The Motion reiterates WorldCom's contentions regarding the contract claim. WorldCom argues that CNI had a duty under the Rebiller Agreement to pay for services that WorldCom provided and that CNI breached this duty by failing to pay all the amounts owed to WorldCom since April 1999 despite WorldCom's demands to do so. WorldCom further asserts that it has been injured by CNI's breach in the amount of $500,886.35[3] plus reasonable attorneys' fees and costs.[4]  This amount is supported by the statement of account that was submitted as Exhibit A (the "Chart") to the Motion.

WorldCom asserts that it is entitled to summary judgment as a matter of law because of the Court's dismissal of CNI's counterclaims.  Specifically, WorldCom claims that CNI is left with no defense as a result of the Court's previous ruling that rejected CNI's argument that its relationship with WorldCom is not governed by the Rebiller Agreement because of an alleged verbal agreement or because the Rebiller Agreement is unenforceable.

---

[3] WorldCom's accounts receivable records also reflect $1,485,479.42 in "unbilled unused minimum charges" which is not included in the $500,886.35 total.  WorldCom states that it is not seeking to recover the former amount through this motion and will withdraw its claim for these charges if the Motion is granted.  (Pl.'s Mem. Supp. Summ. J. 6 n.2.)  The Court is unsure, however, if WorldCom raised this charge in its original complaint.  For that reason, and others, further proceedings will be scheduled to address this issue.

[4] As noted in paragraph 9 of the SOF, "Paragraph 15.10 of the [Rebiller] Agreement provides that '[i]n any action arising out of or relating to this Agreement, the prevailing Party will be entitled to recover its reasonable attorneys' fees and other costs in addition to any other relief that may be awarded.'"

## 2.  CNI's Response To The Motion

CNI claims that the facts do not support WorldCom's allegations that CNI

breached the Rebiller Agreement or that CNI caused damages to WorldCom.  Paramount

to CNI's argument is a written agreement between CNI and Bruce Donahue, Sales

Manager of WorldCom, providing that as of March 1, 1999, after the payment of

$66,398.45, the balance due to WorldCom from CNI would be $0.00 (the "Donahue

Agreement").  The Donahue Agreement also contains a clause stating that WorldCom

will provide CNI "with a credit to be applied against the April 1999 bill for March

charges for PIC-C overcharges back to and including the month of January 1998 through

and including those of the April 1999 billing for March 1999."  (First Declaration, Ex.

B.)  CNI appears to interpret this clause as a contingency agreement where WorldCom

would pay $120,000.00 to CNI in credit after CNI pays the $66,398.45 balance.

According to the First Declaration and CNI's response to the Motion, CNI remitted a

check for $66,398.45 to WorldCom, but withdrew authorization for the check when

WorldCom refused to apply the credits in accordance with the Donahue Agreement.

Additionally, CNI challenges WorldCom's alleged damages by highlighting

various inconsistencies in the Chart, claiming that WorldCom "doctored" certain entries.

In particular, CNI claims that charges specified as "Usage Amount" and "Unused

Minimum" should be deducted from WorldCom's demand because these charges

occurred after June 2, 1999, the alleged date that WorldCom terminated its relationship

with CNI and cut off all services to CNI's customers.  CNI also dismisses three other

items on the Chart:  "Other Charges" is challenged as an unidentified service for which

CNI has no obligation to pay, "Finance Charge" for late payments is contested on

grounds that WorldCom could not accurately determine the proper amount owed by CNI,

and the charge for "Taxes" is disputed on grounds that the parties never entered into an

agreement wherein CNI would pay taxes.  CNI argues that based on the inconsistencies

of the Chart and WorldCom's breach of the Donahue Agreement, CNI does not owe any

money to WorldCom and is actually owed $98,484.00 by WorldCom.

### 3.  The WorldCom Sur-reply

WorldCom argues that the facts set forth in the SOF are deemed admitted given

CNI's failure to properly respond to the SOF and that, accordingly, there exists no

genuine issues of material fact.  WorldCom further asserts that there are no doctored

entries and argues that although Donahue signed the Donahue Agreement, he also wrote

on the agreement that "all information must be reviewed by the account team to confirm

all above listed."  WorldCom supports this claim by attaching pages from a deposition

taken of Donahue where he confirms his handwritten note on the Donahue Agreement.

WorldCom then asserts that the account team did not confirm the Donahue Agreement.

Finally, WorldCom argues that even if the Donahue Agreement exists, the filed-rate

doctrine precludes any claim based thereon and asserts that although CNI issued a check

to WorldCom in the amount of $66,398.45, that check was dishonored and returned due

to insufficient funds, as reflected on the Chart.[5]  Regarding the charges on the Chart that

CNI disputes and the charges that CNI claims occurred after the termination date in June

1999, WorldCom asserts that CNI failed to timely dispute those invoices in accordance

with the procedure set forth in paragraph 5.5 of the Rebiller Agreement.[6]  Additionally,

---

[5] WorldCom asserts that CNI also issued a check for $20,000.00 on or about March 1, 1999, which was
also dishonored and returned because of insufficient funds.
[6] Paragraph 5.5 of the Rebiller Agreement provides

WorldCom maintains that the Chart reflects a credit that eliminated all of the charges

incurred after July 1999 except for the $239,260.37 unused minimum charge issued on

September 10, 1999.[7]

### 4.  The CNI Sur-reply

CNI claims that it is entitled to leave to file the CNI Sur-reply because the

WorldCom Sur-reply raises, for the first time, issues of facts not originally included or

addressed in the Motion.  Particularly, CNI takes issue with WorldCom attaching and

referring to pages from the Donahue deposition in order to respond to CNI's assertion

that WorldCom overstated its claim and that CNI does not owe any money to WorldCom.

CNI also argues that it has not had an opportunity to respond to WorldCom's procedural

argument that certain facts must be admitted under 7056-1, and argues that those facts

were specifically controverted in CNI's response.  At the Hearing, CNI asserted that it is

entitled to leave because it did not have an opportunity to address WorldCom's claim that

---

In the event Customer[, i.e., CNI,] reasonably believes that a
discrepancy exists in any WorldCom invoice, Customer will provide
WorldCom with detailed documentation of same which precisely
specifies the nature of the perceived discrepancy.  In the event
Customer disputes a charge within an invoice, Customer shall promptly
pay all invoiced charges and notify WorldCom in writing of the amount
of and the reason for any dispute.  Customer shall notify WorldCom
within forty-five (45) days of the invoice of any disputed charges.
WorldCom and Customer agree to make reasonable efforts to resolve
such disputes in a timely manner.  If WorldCom and Customer fail to
resolve the disputed amount within ninety (90) days of the due date, the
disputed amount shall be treated as having been due on the original due
date.

[7] This charge was assessed pursuant to paragraph 4.2 of the Rebiller Agreement which provides

Commencing with the billing cycle three (3) months after the Effective
Date and continuing throughout the remainder of the Term, or any
extension thereof, Customer agrees to maintain at least $100,000 in
monthly revenue for Service provided hereunder ("Customer's
Minimum Commitment").  In the event Customer does not maintain
Customer's Minimum Commitment in the months indicated, then for
those month(s) only, Customer will pay WorldCom the difference
between Customer's Minimum Commitment and Customer's actual
charges for the month(s) in question.

CNI's disputes with the invoices at issue were not timely made pursuant to the Rebiller Agreement.

The CNI Sur-reply essentially reiterates the arguments in CNI's first response, but also directly addresses certain arguments in the WorldCom Sur-reply by attaching the Second Declaration. Regarding WorldCom's claim that its account team had to first verify the Donahue Agreement before accepting its terms, Cooke states in the Second Declaration that he "lived through the dealings" with Donahue and "from first hand knowledge" knows that the conditions were met by CNI. He also states that Donahue's written condition only applied to the items involving additional credits due to CNI that remained outstanding at that time. The Second Declaration reasserts that CNI gave a check to WorldCom for $66,389.45 thereby reducing the balance to $0.00 pursuant to the Donahue Agreement. CNI argues that summary judgment should be precluded given the Chart's lack of reliability as evidenced by Donahue's inability to recall during his deposition whether the Donahue Agreement was accurate,[8] Cooke's first hand testimony of the events surrounding the Donahue Agreement, and the Chart's mistaken account of a $251,959.68 balance on April 16, 1999, when it should have shown a $0.00 balance or at most a $66,389.45 balance. Regarding WorldCom's assertion that CNI is barred from disputing the charges under the Rebiller Agreement, CNI claims that it disputed the charges on every invoice starting with the first one issued. The Second Declaration supports this claim by attaching copies of correspondence -- five letters and one email -- between CNI and WorldCom regarding billing issues.

At the Hearing, WorldCom argued that the Court should not consider the CNI Sur-reply filing in its entirety because it was not filed three days before the Hearing and

---

[8] At the deposition, Donahue testified that he did not recall what he reviewed with the account team.

CNI's "new evidence" did not support the CNI Motion. Moreover, WorldCom stated

that the CNI Sur-reply went beyond responding to what Donahue testified to in the

relevant deposition testimony. CNI maintained its position that WorldCom raised new

issues in the WorldCom Sur-reply.

## II. JURISDICTION

The Court has subject matter jurisdiction over this proceeding pursuant to sections

1334 and 157(b) of title 28 of the United States Code, under the July 10, 1984 "Standing

Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for

the Southern District of New York (Ward, Acting C.J.), and under paragraph 32 of the

Court's Order Confirming Debtors' Modified Second Amended Joint Plan of

Reorganization under chapter 11 of title 11 of the United States Code (the "Bankruptcy

Code") (Oct. 31, 2003). This matter is a core proceeding within the meaning of 28

U.S.C. § 157(b). Venue is properly before the Court pursuant to section 1409(a) of title

28 of the United States Code.

## III. STANDARD OF REVIEW

### A.  *MOTION FOR LEAVE TO FILE A SUR-REPLY MEMORANDUM*

The court in *United States v. Int'l Bus. Machs. Corp.* held that reply papers would

be accepted under only two circumstances,

> The first is the case in which a party demonstrates to the
> court that papers to which it seeks to file a reply raise new
> issues which are material to the disposition of the question
> before the court. The second situation in which reply
> papers will be accepted is the case in which the court, after
> reviewing the moving and opposing papers, determines, sua
> sponte [sic], that it wishes further briefing of an issue raised
> in those papers and orders the submission of additional
> papers.

66 F.R.D. 383, 384 (S.D.N.Y.1975).  The reply papers must be "narrowly confined to the issue which prompted them; repetition of arguments made in prior submissions will not be condoned and is scrupulously to be avoided."  *Id.*  In the District of Columbia, courts have established that "[t]he standard for granting a leave to file a surreply is whether the party making the motion would be unable to contest matters presented to the court for the first time in the opposing party's reply."  *Lewis v. Rumsfeld*, 154 F. Supp. 2d 56, 61 (D.D.C. 2001).  Thus, in general, a court would deny a motion to file a sur-reply where the moving party had "ample opportunity to address [the opposing party's] arguments . . . ."  *Tnaib v. Document Technologies, LLC.*, 450 F. Supp. 2d 87, 89 n.3 (D.D.C. 2006) (citation omitted).

The proper procedure for filing a reply is to submit an informal request to the judge's chambers that specifies "the basis for the request, . . . the new issue to which it seeks to reply, and . . . the basis for its belief that that issue is a material one."  *Int'l Bus. Machs.*, 66 F.R.D. at 385.  Additionally, the proposed reply papers should not be filed contemporaneously with the request for leave to submit them as doing so would "enable the requesting party to accomplish its goal of placing the papers before the court, thereby reducing the question of whether the papers should be accepted for filing to relative unimportance."  *Id.*; *see Travelers Ins. Co. v. Buffalo Reinsurance Co.*, 735 F. Supp. 492, 495 (S.D.N.Y. 1990), *vacated in part on other grounds*, 739 F. Supp. 209 (S.D.N.Y.1990) (finding a procedural defect where a proposed sur-reply memorandum was filed in conjunction with a motion for leave to file such papers).  Thus, "reply papers themselves shall not be submitted until the court, having received and reviewed the application to file, invites them."  *Int'l Bus. Machs.*, 66 F.R.D. at 385.

### B.  SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56(c), made applicable to this proceeding by Federal Rule of Bankruptcy 7056, summary judgment is proper where the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. 56(c); *see Celotex Corp. v. Cartrett*, 477 U.S. 317, 322 (1986); *Quarles v. General Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985) ("[T]he mere existence of factual issues -- where those issues are not material to the claims before the court -- will not suffice to defeat a motion for summary judgment.").  A genuine issue of material fact entails "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *see Taggart v. Time Inc.*, 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted.").  To defeat a summary judgment motion, the opposing party "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. 56(c).  The opposing party will not prevail if it merely relies on allegations in its pleading, conclusory statements, or assertions that the motion's supporting affidavits are not credible.  *See Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996).  "In determining whether there is a genuine issue of material fact, the court must resolve all ambiguities, and draw all inferences, against the moving party."  *Parks Real Estate Purchasing Group v. St. Paul Fire and Marine Ins. Co.*, 472 F. 3d 33, 41 (2d Cir. 2006) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

## IV. DISCUSSION

The Court is presented with two main issues. First, whether the CNI Motion should be granted. Second, whether the Motion should be granted. The Court holds that each motion is granted in part and denied in part.

### A. THE CNI MOTION

The CNI Motion can be deemed procedurally flawed because it was filed simultaneously with the CNI Sur-reply. However, even if the Court were to overlook such a flaw and exercise its discretion, the CNI Motion still would not be fully warranted under the circumstances. CNI claims that the WorldCom Sur-reply raises, for the first time, "issues of facts not included or addressed" in the Motion. CNI identifies these "issues of facts" as WorldCom's use of the Donahue deposition and CNI's failure to formally respond to the SOF. At the Hearing, CNI referred to, as an additional issue of fact, WorldCom's claim that CNI did not timely dispute the invoices pursuant to the Rebiller Agreement. The Court finds that WorldCom's "timely dispute" claim is the only issue that proves to be a "new issue[] which [is] material to the disposition of the question before the [C]ourt." *Int'l Bus. Machs.*, 66 F.R.D. at 384.

WorldCom's use of the Donahue deposition in the WorldCom Sur-reply was in response to CNI's allegation that WorldCom overstated its claim and that now it owes money to CNI. This is acknowledged by CNI. In other words, the Donahue deposition itself does not raise any new issues that are material to the instant matter. WorldCom introduced the Donahue deposition to support its responses to CNI's opposition regarding the issues raised in the Motion pertaining to CNI's alleged breach and WorldCom's

damages.  Thus, the Court cannot grant the CNI Motion on these grounds and, therefore, will not consider the CNI Sur-reply regarding the Donahue deposition.

Regarding CNI's response to WorldCom's procedural argument, it is useful to recall the purpose of reply papers -- that is, reply papers may address "new issues raised in the opposition papers so as to avoid giving an unfair advantage to the answering party who took it upon himself to argue those previously unforeseen issues." *Travelers*, 735 F.Supp. at 495.  WorldCom's assertion that the content of the SOF should be deemed admitted as a result of CNI's failure to properly respond to the SOF cannot be characterized as a new issue for purposes of granting the CNI Motion.  Although CNI did not originally raise WorldCom's procedural claim in CNI's response to the Motion and the facts WorldCom seeks to be deemed admitted are material to the breach of contract claim before the Court, this procedural argument can hardly be considered "unforeseen" by CNI.  The Local Bankruptcy Rules are readily available to all parties and it is common practice to consult them before filing papers with the Court.  WorldCom's reliance on these rules to support its argument that the facts in the SOF should be deemed admitted by CNI is an expected response in the regular course of litigation.  The Court is unconvinced by CNI's attempt to characterize this procedural argument as a new issue. Thus, the Court finds that it cannot grant the CNI Motion on these grounds.

WorldCom's assertion that CNI did not timely dispute the monthly invoices, as set forth in the Rebiller Agreement, constitutes a new issue that is material to the instant matter.  CNI's response only raised the defense that the Chart was inaccurate. WorldCom introduced the notion of a timely dispute and would receive an unfair advantage if the Court were to disregard that aspect of the CNI Motion.  The Court

acknowledges, however, that CNI still had "ample opportunity" to oppose WorldCom's

argument at the Hearing -- which was scheduled to take place just one day after CNI filed

the CNI Motion.  Based upon the foregoing, the Court grants the CNI Motion in part to

the extent the CNI Sur-reply addresses WorldCom's assertion that CNI did not timely

dispute the charges reflected on the Chart.

### B.  THE MOTION

As noted in the Motion, the Rebiller Agreement is governed by and interpreted

according to the laws of the State of Mississippi.  *See* The Rebiller Agreement ¶ 15.3.

Accordingly, under Mississippi contract law the plaintiff has the burden of proving by a

preponderance of the evidence that there exists a valid and binding contract which the

defendant has broken or breached, thereby proximately resulting in monetary damages to

the plaintiff.  *See Garner v. Hickman*, 733 So. 2d 191, 195 (Miss. 1999); *Warwick v.

Matheney*, 603 So. 2d 330, 336 (Miss. 1992).  The record evidences, and the parties do

not appear to dispute, that the Rebiller Agreement is a valid and binding contract.  Thus,

there are three main issues that the parties' pleadings raise regarding WorldCom's breach

of contract claim in the Motion (1) whether the facts stated in the SOF are deemed

admitted because of CNI's failure to respond pursuant to Local Bankruptcy Rule 7056-1,

(2) whether there are genuine issues of material fact regarding CNI's alleged breach of

the Rebiller Agreement, and (3) whether there are genuine issues of material fact

surrounding the alleged damages incurred by WorldCom.  The Court will address each of

these issues in turn.

1.  CNI'S Failure To Respond To The SOF

The Local Bankruptcy Rules provide the following instruction for opposing a

motion for summary judgment

> (c) Papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short, and concise statement of additional material facts as to which it is contended that there is a genuine issue to be tried.

> (d) Each numbered paragraph in the statement of material facts required to be served by the moving party shall be deemed admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party.

Local Bankruptcy Rules 7056-1(c) and (d) (2005).  The interpretation and application of

these rules are well established; if a non-moving party fails to respond to the moving

party's annexed statement of material facts, those facts shall be deemed admitted for

purposes of the motion.  *See In re Interbank Funding Corp.*, 310 B.R. 238, 254 (Bankr.

S.D.N.Y. 2004); *O'Brien v. First Marblehead Educ. Res., Inc. (In re O'Brien)*, 299 B.R.

725, 727 (Bankr. S.D.N.Y. 2003).  Equally established, however, is that a "district court

has broad discretion to determine whether to overlook a party's failure to comply with

local court rules."  *Holtz v. Rockefeller & Co., Inc.*, 258 F. 3d 62, 73 (2d Cir. 2001).

Particularly, a court has the authority to overlook a party's failure to file a statement of

material facts.[9]  *See id.* (holding that "while a court 'is not required to consider what the

parties fail to point out' in their Local Rule 56.1 statements, it may in its discretion opt to

---

[9] Although the case law cited in support of this premise deals with Civil Rule 56.1 of the Local District Rules, it is still relevant and applicable to the instant proceedings as the Local Bankruptcy Rules at issue are an adaptation of the Local District Rules.  *See* Local Bankruptcy Rules 7056-1 Comment (2005).

'conduct an assiduous review of the record' even where one of the parties has failed to file such a statement.") (citations omitted); *see also Balut v. Loral Elec. Sys.*, 988 F. Supp. 339, 343 (S.D.N.Y. 1997) (holding that even though defendants' motion could be dismissed for failing to file a Rule 56.1 statement, the court is "not required to do so and may overlook the 'technical deficiency' of a party's submission"); *Thaler v. Casella*, 960 F. Supp. 691, 697 (S.D.N.Y. 1997) (same).  The purpose of local rules like these "is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties." *Holtz*, 258 F. 3d at 74.

Here, CNI's failure to file a Rule 7056-1 statement was inadvertent.  Moreover, a court may show leniency towards a non-moving party, like CNI, that timely submits in addition to its memorandum of law "declarations and other evidentiary materials" that challenge the moving party's factual assertions.  *Cello Holdings, L.L.C. v. Lawrence-Dahl Cos.*, 89 F. Supp. 2d 464, 469 (S.D.N.Y. 2000).  Accordingly, the Court declines to find that CNI's procedural error precluded CNI from disputing the facts asserted in the SOF.  Rather, the Court finds that CNI's response controverts certain material facts in the SOF.

### 2.  Breach Of The Rebiller Agreement

WorldCom claims that CNI breached the Rebiller Agreement by failing to make payments since April 1999.  CNI disputes this allegation primarily by referring to the Donahue Agreement -- i.e., that it paid the requisite amount of $66,398.45 in order to bring its balance for that period to $0.00.  CNI also argues that the Chart is plagued with

incorrect charges, credits, and amounts, as well as doctored entries and substantial omissions.

The Court has already ruled on certain of these issues in its earlier opinion. *See In re WorldCom, Inc.*, 2006 WL 693370, at *7 ("CNI also blames WorldCom for overcharging, failure to give promised discounts, improper billing . . . ."). The Court held that regardless of any inconsistent promises made by WorldCom, the filed-rate doctrine and the controlling terms of the Tariff Governing WorldCom's International Telecommunications Services and the Tariff Governing WorldCom's Domestic Telecommunications Services (collectively "the Tariffs") prohibited CNI from enforcing discounts promised outside of the Tariffs. *Id.* Thus, in this case, whether the check for $66,398.45 was withheld by CNI or returned by WorldCom's bank due to insufficient funds, or whether WorldCom breached the Donahue Agreement by refusing to pay the $120,000.00 credit to CNI is irrelevant. Consideration of the Donahue Agreement is precluded by the Tariffs and therefore has no bearing on this matter. Without this argument, CNI has no other basis to support its defense against WorldCom's breach claim. Accordingly, the Court grants partial summary judgment regarding CNI's breach of the Rebiller Agreement.

### 3. Damages Incurred By WorldCom

Under Mississippi contract law, a court should "not allow the only basis for an award of damages to be the injured party's estimate of the extent to which he was injured . . . [as] [i]t is too speculative and amounts to reversible error." *Frierson v. Delta Outdoor, Inc.*, 794 So. 2d 220, 226 (Miss. 2001). A monetary remedy "must be such that the breaching party is not charged beyond the trouble his default caused." *Id.* at 225.

WorldCom depends on the Chart as sufficient support for its damages claim. CNI, through the First Declaration, claims that the Chart is inaccurate on various grounds. Most significant is CNI's claim that the Chart contains charges that occurred after WorldCom terminated its relationship with CNI in June 1999. In response, WorldCom alleges that the Chart reflects a post-June 1999 credit of most of these charges and that CNI is time-barred under the terms of the Rebiller Agreement from raising objections to these charges. CNI attached to the Second Declaration copies of correspondence between CNI and WorldCom as evidence that it raised objections within the requisite time frame.

The Court notes that CNI's defense against WorldCom's timely dispute argument is unsupported by the record. CNI submitted five letters and one email with the Second Declaration to show that it disputed the charges on a timely basis, but all of these instances deal with credit disputes similar to the ones raised in CNI's counterclaim which the Court dismissed in its earlier opinion. As mentioned previously, the filed-rate doctrine precludes adjudication of such claims by the Court. By disputing promised credits, CNI is, in effect, seeking discounts. If the Court finds such disputes to be valid, it would be engaging in the rate-making process which is within the exclusive role of the Federal Communications Commission and contrary to the underlying principles of the filed-rate doctrine. As such, CNI's claims that some of the charges were made past the termination date of the Rebiller Agreement and that other charges were either unidentified, undetermined, or not covered by the Rebiller Agreement are not supported by the evidence submitted.

The Court finds, however, that the evidence presented by the parties raises a genuine issue of material fact regarding the amount of damages claimed by WorldCom. A reasonable finder of fact could find that the Chart reflects an amount in excess of WorldCom's damages. For instance, WorldCom claims that it credited all post-June 1999 charges, except for the Unused Minimum charge that appears on September 10, 1999, as reflected by the Chart. According to the "Invoice Total" column of the Chart, the total amount of charges entered after June 1999, starting with the entry on July 2, 1999, and excluding the Unused Minimum charge, is approximately $34,025.85. However, the amount credited to CNI for that period, which seems to occur on March 31, 2000, is approximately $25,654.03 -- $8,371.82 less than the amount charged. Additionally, the correspondence attached to the Second Declaration illustrates a discrepancy in the monthly invoice amounts. In a letter sent by WorldCom on June 1, 1999, reference is made to an April 3, 1999 invoice in the amount of $49,489.58. The invoice amount shown on the Chart for that date, however, is $63,295.23. Similarly, the balance amounts in the correspondence do not mirror the Chart. Thus, a reasonable trier of fact could determine that the damages are speculative and not accurately specified based on the record.

Accordingly, the Court denies the Motion in part because there exists a genuine issue of material fact as to the amount of WorldCom's damages.

## V.  CONCLUSION

Based on the foregoing, the Court grants the Motion in part regarding the issue of CNI's breach of the Rebiller Agreement, but denies the Motion in part on grounds that there is a genuine issue of material fact regarding WorldCom's claim for damages. The

Court grants the CNI Motion in part, only to the extent that it addresses WorldCom's

argument regarding CNI's failure to timely dispute the charges reflected in the Chart.

The Court denies the CNI Motion in part regarding any remaining issues.

WorldCom is to settle an order consistent with this opinion. A proposed pre-trial

date should be included in the settled order.

Dated: New York, New York
        July 9, 2007

                                **s/Arthur J. Gonzalez**
                                UNITED STATES BANKRUPTCY JUDGE