UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK  
For Publication
------------------------------------------------------------x  
In re                                                          : Chapter 11  
                                                               :  
WORLDCOM, INC., *et al.*,                                      : Case No. 02-13533 (AJG)  
                                                               : (Confirmed Cases)  
          Debtors.                                 :  
                                                               :  
------------------------------------------------------------x  
                                                               :  
MCI WORLDCOM COMMUNICATIONS, INC.,                             :  
f/k/a WORLDCOM TECHNOLOGIES, INC.,                             :  
                                                               :  
          Plaintiff,                               :  
                                                               :  
          v.                                       : Adv. Proc. No. 04-04338 (AJG)  
                                                               :  
COMMUNICATIONS NETWORK                                         :  
INTERNATIONAL, LTD.,                                           :  
                                                               :  
          Defendant.                               :  
------------------------------------------------------------x  

## OPINION GRANTING PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S DEMAND FOR JURY TRIAL

A P P E A R A N C E S

STINSON MORRISON HECKER LLP  
Attorneys for Plaintiff  
1201 Walnut Street  
Kansas City, MO 64106

    Mark A. Shaiken, Esq.  
    Angela G. Heppner, Esq.  
    Jodi M. Hoss, Esq.

    Of Counsel

FLAMM, BOROFF & BACINE, P.C.  
Attorneys for Defendant  
794 Penllyn Pike  
Blue Bell, PA 19422

>W. Mark Mullineaux, Esq.
>Howard Gershman, Esq.
>>Of Counsel

ARTHUR J. GONZALEZ
United States Bankruptcy Judge

Before the Court is the motion of WorldCom Communications, Inc. and its subsidiaries (the "Debtors" or "WorldCom") to strike Communications Network International, Ltd.'s ("CNI") demand for a jury trial. WorldCom argues that CNI does not have a right to a jury trial because it subjected itself to the jurisdiction of the bankruptcy court upon filing its proof of claim and that WorldCom's objections and claim[1] bear directly on the claims-allowance process. CNI argues that WorldCom's claim does not bear directly on the allowance of the proof of claim, therefore, it is entitled to a jury trial.

Upon consideration of the pleadings and the hearing on this matter on October 24, 2007, the Court grants WorldCom's motion to strike CNI's demand for a jury trial. The Court finds that CNI subjected itself to the equitable jurisdiction of the Court when it filed its proof of claim and WorldCom's breach of contract claim bears directly on the claims-allowance process, thus converting WorldCom's contract claim, a traditionally legal action, into an equitable action for which there is no Seventh Amendment right to a jury trial.

**I.    JURISDICTION**

The Court has subject matter jurisdiction over this proceeding under sections 157 and 1334 of title 28 of the United States Code and under the July 10, 1984 "Standing

---

[1] As used herein, WorldCom's claim refers to WorldCom's breach of contract claim asserted in its adversary proceeding.

2

Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York (Ward, Acting C.J.). This matter is a core proceeding under section 157 of title 28 of the United States Code. Venue is proper before the Court under sections 1408 and 1409 of title 28 of the United States Code.

**II.    BACKGROUND**

*A. Background Information About the Debtors*

Debtors provided a broad range of communications services in over 200 countries on six continents. Through their core communications service business, which included voice, data, internet, and international services, the Debtors carried more data over their networks than any other telecommunications entity. The Debtors were the second largest carrier of consumer and small business long distance telecommunications services in the United States and provided a wide range of retail and wholesale communications services.

On July 21, 2002 and November 8, 2002, the Debtors commenced cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). By orders dated July 22, 2002 and November 12, 2002, the Debtors' chapter 11 cases were consolidated for procedural purposes only and were jointly administered.

On October 29, 2002, the Court entered an order establishing January 23, 2003 as the deadline for the filing of proofs of claim against the Debtors (the "Bar Date"). On October 31, 2003, the Court entered an order confirming the Debtors' Modified Second Amended Joint Plan of Reorganization (the "Plan"). The Plan became effective on April 20, 2004 (the "Effective Date"). Upon the Effective Date, WorldCom changed its name to MCI, Inc. On January 6, 2006, Verizon Communications, Inc. and MCI, Inc. merged.

Under the relevant agreement, MCI, Inc. merged with and into Eli Acquisition, LLC, as a direct, wholly owned subsidiary of Verizon Communications, Inc. Eli Acquisition, LLC, as the surviving entity, was immediately renamed MCI, LLC. MCI, LLC is now doing business as Verizon Business Global, LLC.

### B. Business Relationship Between WorldCom and CNI

The background information about WorldCom and its business relationship and litigation with CNI are set out in detail in the Court's earlier opinion denying CNI's proof of claim. *See MCI WorldCom Commc'ns, Inc. v. Commc'ns Network Int'l, Ltd.* (*In re WorldCom, Inc.*), No. 02-13533 (AJG), Adv. Proc. No. 04-04338 (AJG), 2006 WL 693370, at **1-3 (Bankr. S.D.N.Y. Mar. 13, 2006), *leave to appeal denied*, 358 B.R. 76 (S.D.N.Y. Dec. 6, 2006).

In brief, CNI resells telecommunications services from common carriers like WorldCom to its own customers. In December 1997, WorldCom and CNI entered into a written agreement, the "Intelenet Agreement," which, according to CNI, WorldCom eventually deemed inappropriate for the parties' relationship. In November 1998, CNI provided WorldCom with a copy of the WorldCom Rebiller[2] Service Agreement (the "Rebiller Agreement") that was signed only by CNI. On January 29, 1999, WorldCom gave a copy of the Rebiller Agreement signed by both parties to CNI. On that same day, CNI signed an amendment to the Rebiller Agreement that WorldCom signed on February 4, 1999.[3] WorldCom invoiced CNI monthly for services provided under the Rebiller Agreement.

### C. Procedural History

---

[2] As used herein, the terms "rebiller" and "reseller" are synonymous.
[3] Hereinafter, the defined term Rebiller Agreement includes the Rebiller Agreement, as amended.

Prior to filing for bankruptcy, on February 14, 2001, WorldCom filed a lawsuit against CNI in the United States District Court for the Eastern District of Pennsylvania to recover unpaid amounts for telecommunications services WorldCom provided to CNI (the "Pennsylvania Action"). WorldCom based its claims on theories of contract, negotiable instrument, *quantum meruit*, and unjust enrichment. In its complaint, WorldCom alleges that, on or about March 1, 1999, CNI gave WorldCom a check for $20,000 that was dishonored and returned due to insufficient funds. WorldCom states that on or about April 15, 1999, it received a $20,000 payment from CNI. WorldCom also alleges that, on or about April 16, 1999, CNI remitted a check to WorldCom for $66,398.45 that was dishonored and returned due to insufficient funds. WorldCom asserts that CNI did not make any further payments after April 1999. Shortly thereafter, WorldCom states that it terminated CNI's service due to nonpayment. (Compl. ¶¶ 7-18.)

CNI answered only the contract count of the complaint and counterclaimed for fraud, intentional nondisclosure, breach of contract, defamation, and punitive damages. In its breach of contract counterclaim, CNI argues that WorldCom improperly billed CNI by failing to provide Retex rebates and to reimburse CNI for switching telephone numbers and by charging CNI taxes. CNI asserts that WorldCom overcharged it for usage and improperly charged it for non-usage related charges (PIC-C charges). (Answer and Counterclaims ¶¶ 26-28.) Further, CNI contends that if WorldCom properly credited and charged CNI's account, WorldCom actually owes CNI money. (Answer and Counterclaims ¶ 40.) CNI's answer included a demand for a jury trial.

5

WorldCom moved to dismiss CNI's counterclaims, arguing that most of the claims were barred by the filed-rate doctrine. In August 2001, the district court, pursuant to the doctrine of primary jurisdiction, denied the motion, stayed the Pennsylvania Action, and referred it to the Federal Communications Commission ("FCC"). However, neither party pursued the matter with the FCC. In May 2002, CNI moved to lift the stay in the Pennsylvania Action. The motion was granted and the Pennsylvania Action resumed until WorldCom filed for bankruptcy.

On January 22, 2003, CNI filed a timely proof of claim of $17,701,534, which was assigned claim no. 22183. The proof of claim reasserted its counterclaims in the Pennsylvania Action. On October 12, 2004, WorldCom initiated an adversary proceeding against CNI, objecting to the proof of claim and reasserting the issues in WorldCom's complaint in the Pennsylvania Action. On October 22, 2004, CNI filed an answer, again responding only to the contract count of the complaint. CNI's answer included a demand for a jury trial. On February 22, 2005, WorldCom moved for judgment on the pleadings seeking dismissal of all the claims in CNI's proof of claim. WorldCom also moved for judgment on the issue of CNI's liability regarding its claims based on negotiable instrument, *quantum meruit*, and unjust enrichment, all of which CNI had failed to answer. CNI moved to file responses *nunc pro tunc* to the negotiable instrument, *quantum meruit*, and unjust enrichment counts in the adversary proceeding and also cross-moved for judgment on the pleadings.

On March 13, 2006, the Court granted WorldCom's motion for judgment on the pleadings to the extent that CNI's claims were dismissed. *See In re WorldCom, Inc.,* 2006 WL 693370 at *12. WorldCom's motion was denied, however, as to CNI's liability

6

for unpaid services. *See id.* The Court also granted CNI's motion to file responses *nunc pro tunc* to WorldCom's negotiable instrument, *quantum meruit*, and unjust enrichment claims and denied CNI's cross-motion for judgment on the pleadings. *Id.* In that opinion, the Court stated that the parties' written agreements superseded any alleged oral agreement and that CNI cannot enforce discounts promised outside of the filed tariff. *Id.* at 7-8.

On April 26, 2006, CNI filed an amended answer responding to WorldCom's non-contract claims. On May 1, 2006, CNI filed a motion for leave to appeal. That motion was denied on December 6, 2006 by the United States District Court for the Southern District of New York. On January 1, 2007, WorldCom filed a summary judgment motion. CNI moved for leave to file a sur-reply memorandum in opposition to WorldCom's summary judgment motion. On July 9, 2007, the Court granted CNI's motion for leave to file a sur-reply memorandum in part, only to the extent that it addressed WorldCom's contention regarding CNI's failure to timely dispute its charges, and denied CNI's motion in part regarding any remaining issues. On that same day, the Court granted WorldCom's summary judgment motion in part as to the issue of CNI's breach of the Rebiller Agreement and denied the summary judgment motion in part on the grounds that there is a genuine issue of material fact regarding WorldCom's claim for damages. *See MCI WorldCom Commc'ns, Inc. v. Commc'ns Network Int'l, Ltd.* (*In re WorldCom, Inc.*), No. 02-13533 (AJG), Adv. Proc. No. 04-04338 (AJG), 2007 WL 1989262 (Bankr. S.D.N.Y. July 9, 2007).

On October 5, 2007, WorldCom filed a motion to strike CNI's jury trial demand. On October 17, 2007, CNI filed its reply to that motion. On October 24, 2007, the Court heard oral argument on the motion.

### III. PARTIES' CONTENTIONS

#### A. *WorldCom's Contentions*

WorldCom argues that CNI does not have a right to a jury trial because CNI submitted itself to the jurisdiction of the bankruptcy court upon filing its proof of claim. WorldCom contends that a creditor who files a proof of claim is not entitled to a jury trial if the dispute at issue affects the claims-allowance process as the dispute is thereby inextricably intertwined with a public right. (Mem. Supp. Mot. Strike 3-4, 7-8; Mot. Strike Hr'g, Oct. 24, 2007.) WorldCom also argues that its objections and claim arise out of the same contracts, tariffs, and transactions as the facts asserted in CNI's proof of claim and are, therefore, core proceedings under section 157 of title 28. Further, WorldCom argues that CNI's proof of claim and WorldCom's objections and claim implicate the restructuring of the debtor-creditor relationship between CNI and WorldCom as to which entity owes money and how much it owes. WorldCom asserts that if CNI had prevailed on its proof of claim that WorldCom owed it for improper charges, fraud, and breach of contract, the Court would have had to resolve the issue of how much CNI owed WorldCom for services WorldCom provided to CNI in order to determine the amount payable on CNI's proof of claim against WorldCom. Consequently, WorldCom contends that CNI waived its jury trial right as to any issue integrally related to its proof of claim when CNI filed its proof of claim. (Mem. Supp. Mot. Strike 7-8.)

8

In addition, WorldCom argues that a claimant's right to a jury trial is determined based upon the circumstances that existed when the jury trial was demanded, not where the parties are in the litigation process at the time the Court determines the jury demand. (Mot. Strike Hr'g, Oct. 24, 2007.) Lastly, WorldCom asserts that the issues in the instant case are not the type of issues that are split between the bench and a jury as CNI contends and that under CNI's rationale, whenever a debtor had an offset and asserted it in a counterclaim, there would always be a jury trial. (Mot. Strike Hr'g, Oct. 24, 2007.)

### B. *CNI's Contentions*

CNI argues that when it filed its proof of claim, it did not waive its right to a jury trial because WorldCom's claim does not bear directly on the allowance of the claim. CNI contends that resolving WorldCom's claim is not vital to the bankruptcy process; instead, it is only incidentally related to the bankruptcy process. CNI asserts that WorldCom is asking for money damages to compensate the estate and that if WorldCom prevails, the estate is enlarged and the dispute does not affect the claims-allowance process. CNI contends that this is evidenced by the fact that the Court disallowed the proof of claim prior to resolving WorldCom's breach of contract claim. (Mem. Opp'n Mot. Strike 3-4.)

Further, CNI argues that a claimant's right to a jury trial is determined based upon the circumstances that exist at the time of trial, meaning at the time the Court rules on the jury demand, thus, the Court must consider the fact that it disallowed the proof of claim in determining whether WorldCom's claim implicates the claims-allowance process. (Mot. Strike Hr'g, Oct. 24, 2007.) In addition, CNI argues that a determination as to whether a claimant is entitled to a jury trial is determined on an issue-by-issue basis. CNI

9

asserts that since the Court has already ruled on the proof of claim, WorldCom's claim is a separate and independent issue, thus, it has the right to a jury trial. (Mot. Strike Hr'g, Oct. 24, 2007.)

**IV.    DISCUSSION**

*A. Jury Trial Right*

*1. Seventh Amendment*

The right to a jury trial in an action commenced in federal court is determined as a matter of federal law. *Ernst & Young v. Bankruptcy Services, Inc.* (*In re CBI Holding Co.*), 311 B.R. 350, 365 n.8 (S.D.N.Y. 2004) (citation omitted). The Seventh Amendment of the United States Constitution preserves the right to a jury trial for actions at common law, where the value in controversy exceeds twenty dollars and concerns a private right. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41, 109 S.Ct. 2782, 2790, 106 L.Ed.2d 26 (1989) (citations omitted); *see also McClelland v. Braverman Kaskey & Caprara, P.C.* (*In re McClelland*), 322 B.R. 90, 94 (Bankr. S.D.N.Y. 2005) (citation omitted). In determining whether a claimant is entitled to a jury trial, the Court must first determine whether the action is legal or equitable by comparing it to actions brought in the English courts during the 18th century prior to the merger of law and equity courts. Second, the Court must determine whether the remedy sought is legal or equitable. The second line of inquiry should be given greater weight. *Granfinanciera*, 492 U.S. at 42, 109 S.Ct at 2790; *Germain v. Conn. Nat'l Bank,* 988 F.2d 1323, 1328 (2d Cir. 1993).

However, a party does not have a right to a jury trial "for cases 'involving statutory rights that are integral parts of a public regulatory scheme and whose adjudication Congress has assigned to . . . a specialized court of equity,'" because those

10

rights are deemed "'public.'" *Germain*, 988 F.2d at 1331 (quoting *Granfinanciera*, 492 U.S. at 55 n.10, 109 S.Ct. at 2797 n.10). The *Germain* court further explained that the action "must be inextricably intertwined with a public right; the 'involvement' may not be casual or vague." *Id*. In *Germain*, the Second Circuit held that the trustee's action did not "bear[] a close nexus to any statutory public right" because it did not affect "the essence of the bankruptcy regulatory scheme of allowing or reordering claims." *Id*. However, if a party's action is inextricably intertwined with a statutory public right, such as the bankruptcy regulatory scheme of allowing or reordering claims, then the party does not have a Seventh Amendment right to a jury trial. *Id*.

Neither WorldCom nor CNI dispute that a contract claim was historically tried in a court of law and that the monetary relief WorldCom seeks is legal in nature, which is ordinarily triable by a jury.[4] Therefore, in order to determine whether CNI has a jury trial right, the Court must determine whether WorldCom's breach of contract claim is inextricably intertwined with a public right — the claims-allowance process. If so, CNI would not have a jury trial right as to WorldCom's breach of contract claim.

## 2. *Effect of the Claims-Allowance Process*

A creditor's right to a jury trial depends upon whether that creditor filed a proof of claim *and* if the dispute in which it requested a jury trial implicates the claims-allowance process. *See Germain*, 988 F.2d at 1329 ("[T]he *Katchen*, *Granfinanciera*, and *Langenkamp* line of Supreme Court cases stands for the proposition that by filing a proof of claim a creditor forsakes its right to adjudicate before a jury any issue *that bears directly on the allowance* of that claim . . . ."). There is no right to a jury trial as to any

---

[4] Since the parties do not dispute that a contract claim and monetary relief are traditionally legal in nature and there is ordinarily a right to a jury trial, the Court does not have to conduct the analysis set forth in *Granfinanciera* to determine whether the action is legal or equitable.

11

issue bearing directly on the claims-allowance process, such as a determination as to the validity of a creditor and the creditor hierarchy, because the legal issue has been converted into an equitable issue. *Id.* at 1329-30 (right to a jury trial waived as to disputes bearing directly on the claims-allowance process "on the theory that the legal issue has been converted to an issue of equity"); *see also Langenkamp v. Culp*, 498 U.S. 42, 44, 111 S.Ct. 330, 331, 112 L.Ed.2d 343 (1990) (per curiam) ("In *Granfinanciera* we recognized that by filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power." (quoting *Granfinanciera*, 492 U.S. at 58-59, 59 n.14, 109 S.Ct. at 2799-2800, 2799 n.14)).

Actions that are legal in nature, entitling a claimant to a jury trial, are not "'magically converted into equitable issues'" simply because the actions are connected to a bankruptcy proceeding, which is an equitable proceeding. *Germain*, 988 F.2d at 1329 (quoting *Ross v. Bernhard*, 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970)). In a bankruptcy proceeding, however, a legal action converts into an equitable action if that action becomes part of the claims-allowance process "because determining pro rata distribution is characteristically equitable." *Id.* An action becomes part of the claims-allowance process if it "is integrally related to the equitable reordering of debtor-creditor and creditor-creditor relations. If an equitable reordering cannot be accomplished without resolution of what would otherwise be a legal dispute, then that dispute becomes an essential element of the broader equitable controversy." *Id.*

If a creditor's proof of claim is met with an adversary proceeding and the determination of that adversary proceeding affects the claims-allowance process, the

12

creditor does not have a right to a jury trial, even if the adversary proceeding involves claims historically tried in a court of law. *In re CBI Holding Co.,* 311 B.R. at 365 (citing *Langenkamp*, 498 U.S. at 44, 111 S.Ct. at 331; *Granfinanciera*, 492 U.S. at 58-59, 59 n.14, 109 S.Ct. at 2799-2800, 2799 n.14). However, a determination that an action is "core" is given "minimal weight."[5] *Germain*, 988 F.2d at 1327-28.

The Second Circuit's discussion of *Frost*, *Inc. v. Miller, Canfield, Paddock & Stone, P.C. (In re Frost),* 145 B.R. 878 (Bankr. W.D. Mich. 1992)[6] in *Germain* implies that if a debtor's counterclaims in response to a creditor's proof of claim are found to be integrally related to the claims-allowance process — meaning that the debtor does not have a Seventh Amendment right to a jury trial — then the creditor does not have a jury trial right as to any of the counterclaims either. *Germain*, 988 F.2d at 1330 n.9 ("To the extent that [*Frost*] is suggesting that the debtor was essentially objecting to the allowance of the attorney's claim and that the debtor's success meant the disallowance of the attorney's claim, we agree that the debtor's objection was part of the claims-allowance process."). *See also McClelland v. Braverman Kaskey & Caprara, P.C.* (*In re McClelland),* 322 B.R. 90, 96 (Bankr. S.D.N.Y. 2005).

Here, WorldCom's adversary proceeding, which includes its objections to CNI's proof of claim and breach of contract claim, is inextricably intertwined with CNI's proof of claim. It arises out of the same underlying contracts as CNI's proof of claim and both

---

[5] WorldCom's adversary proceeding is a core proceeding under section 157 of title 28. *See In re CBI Holding Co.,* 311 B.R. at 363 (response to a proof of claim is a counterclaim and, therefore, a core proceeding under section 157 of title 28 (citations omitted)).

[6] In *Frost*, the debtor filed an adversary proceeding that objected to a proof of claim for unpaid legal fees and included counterclaims for negligence and breach of contract. The debtor demanded a jury trial. The bankruptcy court denied the request. The bankruptcy court found that the counterclaims asserted by the debtor arose from the same conduct as the proof of claim and "require[d] examination of the overall debtor-creditor relationship." Therefore, the bankruptcy court concluded that the counterclaims were an inextricable part of the claims-allowance process. *In re Frost,* 145 B.R. at 879, 882.

13

are logically related. If the Court had determined that CNI had any amount due to it under the contracts forming the basis of its assertions in the proof of claim, the Court would have had to resolve WorldCom's breach of contract claim at that time in order to determine the amount of CNI's proof of claim. The Court finds that the resolution of WorldCom's claim bears directly on the claims-allowance process for which there is no Seventh Amendment right to a jury trial because WorldCom's claim and objections to CNI's proof of claim are factually and legally intertwined with CNI's proof of claim — all are based on the same operative facts and contracts. The jury trial right is waived as to any matter that the Court would be required to resolve in order to determine the proof of claim's validity or amount, including offsets against a creditor's claim due to a debtor's counterclaim. *See In re Frost*, 145 B.R. 878; *see also In re CBI Holding Co.*, 311 B.R. at 355-366;[7] *In re McClelland,* 322 B.R. at 91-93, 97-98.[8]

### 3. Timing of Jury Trial Waiver

CNI argues that since the Court previously determined the proof of claim, WorldCom's claim is a separate and independent issue, thus, CNI has a right to a jury

---

[7] In *CBI Holding Co.,* Ernst & Young filed a proof of claim against debtors CBI Holding Co. and its subsidiaries for unpaid auditing and consulting services. Under the plan, the debtor granted the disbursing agent the right to prosecute all adversary proceedings and objections to the claims. The disbursing agent objected to the claim and asserted counterclaims against Ernst & Young, including claims on behalf of the debtors. Ernst & Young demanded a jury trial. The district court held that Ernst & Young did not have a right to a jury trial on the debtors' claims because those claims were interconnected with the proof of claim and the objection. The counterclaims, objection, and proof of claim were based on the same set of operative facts; thus, the counterclaims were integrally related to the claims-allowance process because success on the counterclaims would result in the disallowance of Ernst & Young's proof of claim.

[8] In *McClelland*, each of the claimants filed a proof of claim. As part of the debtor's objection to those claims, the debtor asserted counterclaims against the claimants, which included a request for affirmative relief. The bankruptcy court stated that the debtor's counterclaims were core proceedings because the counterclaims arose from the same transaction as the proofs of claim and both were logically related. Further, the bankruptcy court stated that the same services that the claimants requested compensation for in their proofs of claim were the same services, during the same time period that formed the basis of the debtor's counterclaims. The bankruptcy court concluded that the counterclaims were integrally related to the claims-allowance process thereby converting the counterclaims to an equitable dispute for which there is no Seventh Amendment right to a jury trial.

14

trial. However, it is the filing of the proof of claim that invokes the waiver, even though the scope and breadth of the waiver of the jury trial right may not be ascertained until analyzed in the context of the claim asserted against the creditor. It is immaterial whether the creditor filed its proof of claim prior or subsequent to the commencement of the adversary proceeding or whether the jury trial demand preceded or followed the filing of the proof of claim. Additionally, it is immaterial whether the proof of claim has been disallowed prior to the Court's determination of the jury trial demand. In each situation, the filing of the proof of claim invokes the claims-allowance process and the creditor subjects itself to the equitable jurisdiction of the Court thereby waiving its right to a jury trial as to any issue that bears directly on the claims-allowance process. *See SNA Nut Co. v. The Häagen-Dazs Co.*, 302 F.3d 725, 730 (7th Cir. 2002) ("'nothing in [the relevant Supreme Court precedent] suggests that it makes any difference whether the filing of the adversary proceeding precede[d] or follow[ed] the submission of a claim against the bankruptcy estate . . . . submission of the claim still would trigger the process of allowance and disallowance of claims . . . .'") (alterations in original) (quoting *In re Peachtree Lane, Assocs.*, 150 F.3d 788, 798 (7th Cir. 1998)).

In *SNA Nut Co.*, the bankruptcy court disallowed the proof of claim prior to determining the jury trial demand. SNA Nut Co. ("SNA") commenced two adversary proceedings against Häagen-Dazs. The first alleged Häagen-Dazs owed SNA money for nuts SNA delivered to Häagen-Dazs, the second alleged that Häagen-Dazs breached five supply contracts. Subsequent to the commencement of the adversary proceeding, Häagen-Dazs filed a proof of claim against SNA and a jury trial demand in the second action. The bankruptcy court disallowed the proof of claim when it approved a

15

settlement agreement in the first action. Prior to the trial in the second action, SNA filed a motion to strike the jury trial demand. The bankruptcy court granted SNA's motion and the district court affirmed that decision. On appeal, the Seventh Circuit held that when Häagen-Dazs filed its proof of claim against the bankruptcy estate, it triggered the process of allowing and disallowing claims thereby consenting to the bankruptcy court's equitable jurisdiction and thus, it no longer had a right to a jury trial. *See SNA Nut Co.,* 302 F.3d at 728-31.

The Court's determination that no amount is due to CNI under its proof of claim does not affect the analysis the Court must conduct under *Germain* or the scope or breadth of the waiver at issue. When CNI filed its proof of claim against the bankruptcy estate, it triggered the claims-allowance process, thereby subjecting itself to the equitable jurisdiction of the bankruptcy court. It is the filing of the proof of claim, not its validity, that invokes the waiver of a jury trial right. Hence, the timing of any determination of the validity of the proof of claim is irrelevant to the waiver of a jury trial right. The disallowance of CNI's claim simply resolved CNI's part of the claims-allowance process, it did not end the process. Since the claims-allowance process is still implicated, CNI does not have a right to a jury trial. To hold otherwise would have the anomalous result that a creditor waives its jury trial right *only* if all or a portion of its proof of claim is allowed, yet retains the right if its proof of claim is disallowed in its entirety. In other words, the conversion of the contract dispute from a legal issue to an equitable issue would be temporary and would become permanent only if the proof of claim were allowed in order to offset the contract issue affirmatively raised by the debtor. If not, the creditor would have a right to a jury trial. There is no support for such a finding.

16

*B. Retention of Jury Trial Right*

The Court notes that the only cases supporting the retention of the jury trial right for a creditor who files a proof of claim that is met with an adversary proceeding in response to the proof of claim, which is integrally related to that proof of claim, are cases where that creditor properly withdrew its proof of claim such that it was treated as a legal nullity — as if it had never been filed. As a result, that creditor would be deemed not to have submitted itself to the equitable jurisdiction of the bankruptcy court and, therefore, the adversary proceeding asserted against it would not implicate the claims-allowance process. The Seventh Circuit suggested this outcome in *SNA Nut Co.* when it stated that if a creditor properly withdrew its proof of claim, it "retained" its right to a jury trial. *SNA Nut Co.,* 302 F.3d at 731 (distinguishing *Smith v. Dowden*, 47 F.3d 940, 943 (8th Cir. 1995) and *In re 20/20 Sport, Inc.*, 200 B.R. 972, 979-80 (Bankr. S.D.N.Y. 1996) on the basis that the creditors properly withdrew their proof of claim in *Dowden* and *20/20 Sport*); *see, e.g.*, *Dowden*, 47 F.3d at 943 (creditor retains jury trial right if proof of claim is properly withdrawn; the withdrawn claim thereby becomes a legal nullity and the creditor is treated as if the proof of claim had never been filed, therefore, the creditor has not submitted itself to the equitable jurisdiction of the court and the adversarial proceeding is not integrally related to the claims-allowance process).[9] This is not the situation before the Court.

---

[9] In *Dowden*, the trustee filed an objection to the proof of claim of creditor Harper, Young, Smith & Maurras for unpaid legal fees. In response, the creditor moved to withdraw its proof of claim. The bankruptcy court granted the creditor's motion to withdraw. Shortly thereafter, the trustee filed an adversary proceeding to avoid alleged fraudulent transfers against the creditor and its general partners. The partners demanded a jury trial. The bankruptcy court denied the partners' jury trial demand on the basis that the partners submitted themselves to the jurisdiction of the bankruptcy court when they filed the proof of claim. The bankruptcy court further stated that the fraudulent transfer action was integral to the restructuring of the debtor-creditor relationship. On appeal, the issue addressed by the Eighth Circuit was whether a creditor who has successfully withdrawn its claim prior to the filing of an adversary proceeding

17

## V.      CONCLUSION

WorldCom's motion to strike CNI's jury demand is granted. When CNI filed its proof of claim, it subjected itself to the equitable jurisdiction of the Court and CNI does not have a jury trial right as to any issue implicating the claims-allowance process. The Court finds that WorldCom's breach of contract claim arises from the same contracts, tariffs, and transactions as CNI's proof of claim. The contracts that CNI alleges that WorldCom breached in its proof of claim are the very same contracts that WorldCom alleges CNI breached. Therefore, WorldCom's breach of contract claim is inextricably intertwined with the claims-allowance process and as a result the contract dispute, a traditionally legal issue, has been converted into an equitable issue for which there is no Seventh Amendment right to a jury trial.

The Debtor is to settle an order consistent with this opinion.

Dated:   New York, New York
         December 7, 2007

                                                    s/**Arthur J. Gonzalez**
                                                    UNITED STATES BANKRUPTCY JUDGE

---

has irrevocably waived its jury trial right. The Eighth Circuit held that the partners retained their jury trial right because they successfully withdrew their claim prior to the commencement of the trustee's adversarial proceeding. The Eighth Circuit further stated that the withdrawn claim became a legal nullity and the partners should be treated as if the claim had never been filed, meaning the partners have not submitted to the equitable jurisdiction of the bankruptcy court. Thus, the fraudulent transfer action did not arise as part of the claims-allowance process and was not integral to the restructuring of the debtor-creditor relationship. *Dowden*, 47 F.3d at 941-943.