HEARING DATE: February 19, 2008, at 10:00 A.M. Eastern Time
OBJECTION DATE: February 19, 2008 at 10:00 A.M. Eastern Time

STINSON MORRISON HECKER LLP
Attorneys for Debtors and Debtors in Possession
1201 Walnut Street
Kansas City, MO 64106
Telephone: (816) 842-8600
Facsimile: (816) 691-3495
Mark A. Shaiken, Esq.
Andrew W. Muller, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------ x

| | | |
|---|---|---|
| In re | : | |
| | : | Chapter 11 |
| WORLDCOM, INC., et al., | : | Case No. 02-13533 (AJG) |
| | : | (Jointly Administered) |
| | : | |
| Debtors. | : | |
| | : | |
| MCI WORLDCOM | : | |
| COMMUNICATIONS, INC. f/k/a | : | |
| WORLDCOM TECHNOLOGIES, INC., | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | Adversary Proceeding No. 04-04338 (AJG) |
| | : | |
| COMMUNICATIONS NETWORK | : | |
| INTERNATIONAL, LTD., | : | |
| | : | |
| Defendant. | : | |

------------------------------------------------------ x

## MEMORANDUM OF LAW IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE CLAIMS OF COMMUNICATIONS NETWORK INTERNATIONAL, LTD.

### INTRODUCTION

Based on this Court's prior rulings,[1] in this trial, all that is at issue is the amount of money

owed by Communication Network International, Ltd. ("CNI") to MCI WorldCom

---

[1] All of CNI's counterclaims against MCI have been dismissed (ECF 33) and the Court has entered summary judgment ruling that CNI is liable for breach of the Rebiller Agreement between MCI and CNI (ECF 52).

Communications, Inc. n/k/a MCI Communications Services Inc. ("MCI") under the applicable tariffs and agreements. Based on CNI's contentions of fact set forth in the proposed Joint Pretrial Order, it is apparent that CNI will attempt to put on evidence to establish the very matters the Court has already ruled are barred by the filed rate doctrine. All of the issues on which CNI will apparently attempt to offer evidence have been disposed by the Court and such evidence should be excluded.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Historical Background.

As the Court is aware,[2] this controversy stems from an Intelenet Agreement between MCI and CNI, which was eventually replaced by a Rebiller Service Agreement (the "Rebiller Agreement"). Under the terms of the Rebiller Agreement, CNI acted as a rebiller or reseller of long distances telecommunications services provided by MCI. In exchange, CNI agreed to compensate MCI consistent with the terms of the Rebiller Agreement and MCI's tariffs filed with the Federal Communications Commission (the "Tariffs"). CNI breached the terms of the Rebiller Agreement by failing to pay amounts due to MCI and as a result, MCI canceled services to CNI. As will be proven at trial, CNI last paid MCI in April, 1999, and MCI is still owed $480,030.45 for unpaid charges and unmet usage minimums, plus interest and attorneys fees for a total debt in excess of $2 million (the "Debt").

On February 14, 2001, MCI filed a lawsuit against CNI in the United States District Court for the Eastern District of Pennsylvania seeking to recover these unpaid amounts (the "Pennsylvania Action"). In addition to its answer denying liability for the Debt, CNI brought

---

[2] The facts underlying the dispute between MCI and CNI are set forth in Schedule I to MCI's Motion for Summary Judgment. (ECF 44 p. 4).

several counterclaims against CNI including fraud in the inducement (Count I); intentional nondisclosure (Count II); breach of contract – failure to provision and to transfer (Count III); breach of contract – improper billing (Count IV); breach of contract – prevention of CNI's bills (Count V); beach of contract – causing CNI's loss of business (Count VI); defamation (Count VII); and punitive damages (Count VIII).  In its claim of improper billing, CNI alleged that MCI had failed to (1) provide certain rebates; (2) credit CNI for PIC charges; (3) waive tax charges; and (4) reimburse CNI for overcharges.  (ECF 4, Ex. A p. 14).

Thereafter, MCI filed a motion to dismiss CNI's counterclaims on the ground that most of the claims were barred by the filed-rate doctrine.  In August of 2001, the Pennsylvania District Court referred the case to the FCC under the doctrine of primary jurisdiction and denied the motion as moot.  CNI did not pursue the case in front of the FCC and the Pennsylvania Action was revived in May of 2002 until MCI commenced these Chapter 11 bankruptcy cases.

**B.  Adversary Proceeding Background.**

On October 11, 2004, MCI commenced this adversary proceeding against CNI incorporating MCI's allegations from the Pennsylvania Action.  CNI responded by incorporating its answers to MCI's complaint in the Pennsylvania Acton and by incorporating its counterclaims against MCI.  (ECF 4).

**C.  The Court's Rulings Rejecting CNI's Contentions in the Adversary Proceeding.**

On February 22, 2005, MCI filed a motion for Judgment on the Pleadings and to Dismiss CNI's counterclaims (the "Motion to Dismiss"), in their entirety, based on the filed-rate doctrine, the written agreements between the parties, and the statute of limitations.  (ECF 11).  On March 31, 2006, the Court granted the Motion to Dismiss as to CNI's counterclaims.  (ECF 33). The Court considered all of CNI's arguments in opposition to the Motion to Dismiss, specifically

as it related to the filed-rate doctrine, and concluded that the doctrine precluded all of CNI's claims that MCI overcharged, failed to give promised discounts or credits, and improperly billed. (ECF 33, p. 13).  The Court also concluded that the written agreements between MCI and CNI precluded any enforcement of alleged oral agreements.  (ECF 33, p. 15).  As the Court stated, "any apparent contradiction with other representations that [MCI] made to CNI do not alter the ultimate authority of the Tariffs and the written agreements."  (ECF 33, p. 16).  On the issue of whether MCI's termination of the Rebiller Agreement was proper, the Court concluded that the Tariffs and the Rebiller Agreement clearly gave MCI the right to "end the relationship with CNI for nonpayment."  (ECF p. 17).  Accordingly, MCI's termination of the Rebiller Agreement was proper.

MCI then moved, on January 15, 2007, for summary judgment on its claim against CNI for breach of the Rebiller Agreement and payment of the Debt (the "Summary Judgment Motion").  (ECF 44).  In support of the Summary Judgment Motion, MCI submitted a chart summarizing the invoices to CNI, including the charges and credits to CNI's account (the "Summary Chart").  On February 14, 2007, CNI filed a response to the Summary Judgment Motion arguing that the motion should be denied for various reasons including: (1) entries on the Summary Chart were "doctored"; (2) MCI wrongfully terminated the Rebiller Agreement; (3) the Summary Chart included improper charges including "other charges," "finance charges," unused minimum charges; (4) MCI did not abide by agreements to provide credits to CNI; and (5) improperly charging CNI for taxes.  (ECF 44, p. 3).  In support of its response, CNI attached the declaration of Curtis Cooke ("Cooke"), the secretary of CNI, to substantiate its claims (the "First Cooke Declaration").  (ECF 44, Ex. B).

In the First Cooke Declaration, Cooke asserted all the various credits that he thought should have been made to CNI's account to reduce the Debt. The grievances in the First Cooke Declaration are as follows:

- one of the entries in the Summary Chart was "doctored". (ECF 44, Ex. B ¶ 10);

- post-termination charges should be removed from the Summary Chart. (Id. at ¶ 12);

- MCI's termination of the Rebiller Agreement was illegal. (Id.);

- the tally for "other charges" was improper because CNI had no obligation to pay such charges. (Id. at ¶ 13);

- there was no basis for CNI to be charged with "unused minimum" charges because MCI had breached the Rebiller Agreement. (Id. at ¶ 14);

- CNI was not obligated to pay finance charges because Bruce Donahue, MCI employee, allegedly told Cooke "not to worry about it". (Id. at ¶ 15);

- MCI breached an oral agreement with Donahue that $120,000 would be applied to CNI's account (the "Donahue Agreement") (Id. at ¶ 16); and

- there was never an agreement that MCI could charge CNI for taxes (Id. at ¶ 17).

Then, a day before the hearing on the Summary Judgment Motion, CNI submitted Cooke's second declaration (the "Second Cooke Declaration"), (ECF 48), in which he stated:

- he "lived through the dealings with Mr. Donahue" and that based on this he can testify that there were no conditions to the Donahue Agreement and that it was a binding agreement on MCI. (ECF 48 ¶ 6);

- he was sure that MCI promised to credit CNI's account and bring the balance due down to $0 if CNI paid $66,389.45. (Id. at ¶ 8); and

- he identified a series of letters which, according to Mr. Cooke, were evidence that MCI had agreed to provide CNI with credits and not to charge for taxes. (Id. at ¶¶ 14-16).

At the hearing on the Summary Judgment Motion, the Court pressed counsel for CNI to explain why the issues raised in the First and Second Cooke Declarations were not precluded by the filed rate doctrine. (ECF 51 at 10:17-21). The Court also questioned CNI regarding its

allegations as to the Donahue Agreement. CNI asserted that when Mr. Donahue allegedly told CNI that there was no balance due, such a statement was a misrepresentation. (ECF 51 at 13:5-18). In response, the Court stated that CNI's argument was getting "a little ridiculous" and that on the document allegedly memorializing the "Donahue Agreement" it expressly stated that any agreement had to be approved by the accounting department. (Id. at 13:19-24). When confronted by the Court, CNI conceded that it did not have any evidence that the numbers on the Summary Chart were inaccurate, only that CNI had contrary facts. (Id. at 14:9-17).

On July 9, 2007, the Court granted the Motion for Summary Judgment in part (ECF 52), ruling in MCI's favor on the issue of CNI's liability for the Debt, but finding that there were factual disputes as to the amount of MCI's damages. (ECF 52, p. 20). In its ruling, the Court summarized and rejected CNI's basis for disputing the Debt.

In doing so, the Court rejected CNI's contentions that the Donahue Agreement and that the Summary Chart included incorrect charges, credits, and amounts, as well as doctored entries and substantial omissions. (Id. at 17-18). The Court ruled that certain of these issues had already been ruled upon in the Court's earlier opinion (Id. at 18), and the Court concluded that "[c]onsideration of the Donahue Agreement is precluded by the Tariffs and therefore has no bearing on this matter." (Id.) Thus, the Court held that CNI had no basis to support its defense against MCI's claim for breach of the Rebiller Agreement.

The Court rejected CNI's claims that the Summary Chart was inaccurate on various grounds. The Court held that letters that were attached to the Second Cooke Declaration dealt with "credit disputes similar to the ones raised in CNI's counterclaim which the Court dismissed in its earlier opinion." (Id. at 19). The Court rejected CNI's dispute of promised credits holding the dispute was, in effect, an attempt to get discounts prohibited by the filed rate doctrine. (Id.)

In the end, the Court held that "CNI's claims that some of the charges were made past the termination date of the Rebiller Agreement and that other charges were either unidentified, undetermined, or not covered by the Rebiller Agreement are not supported by the evidence submitted." (Id.).

### D. CNI's Contentions in the Pre Trial Order.

In the pre trial order entered by the Court on February 11, 2008, (ECF 64) CNI's statement of controverted facts amounts to a complete regurgitation of the First Cooke Declaration, already rejected by the Court. As set forth hereafter, CNI has already pressed these "facts" in this case, and the "facts" have been rejected by the Court based on applicable law. For these reasons, CNI should be precluded from putting on evidence in support of facts that have no place in this trial. To do otherwise would be a waste of trial time and of the Court's resources.

## ARGUMENT

The evidence that CNI seeks to present at trial has previously been rejected by the Court as a matter of law. These prior rulings constitute the "law of the case" and effectively render CNI's evidence inadmissible. Accordingly, this evidence should be excluded by the Court.

Under the law of the case doctrine, once a court rules on an issue in the case, the ruling continues to govern subsequent stages of the case. Manley v. Mazzuca, Case No. 01-civ-5178, 2007 WL 4233013 at *3 (S.D.N.Y. Nov. 30, 2007) (citing Sagendorf-Teal v. Cnty. of Resselaer, 100 F.3d 270, 277 (2nd. Cir. 1996)). The purpose of the law of the case doctrine is to avoid reopening what has already been decided. Manley, 2007 WL 4233012 at *3. Thus, "'where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'" Id. (quoting Official Committee of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 167 (2nd Cir. 2003)). Examples of "good reasons" include an intervening change of controlling law, the availability of

new evidence, or the need to correct a clear error or prevent manifest injustice.  Id.  Here, none

of these "good reasons" are present and the Court's prior rulings should be applied to exclude

CNI's proposed evidence.

The following chart below summarizes evidence CNI will attempt to offer, and the law of

the case:[3]

| CNI Contentions from Pretrial Statement | Judicial Ruling |
| --- | --- |
| Other Charges:   According to CNI, it has no obligation to pay for "Other Charges".  p.6 ¶ C. | "CNI also argues that the Chart is plagued with incorrect charges, credits, and amounts . . . The Court has already ruled on certain of these issues in its earlier opinion.  See In re WorldCom, Inc., 2006 WL 693370 at *7 ("CNI also blames WorldCom for overcharging, failure to give promised discounts, improper billing . . .")". |
| Unused Minimums:  CNI disputes this charge because it came allegedly 4 months after WorldCom stopped services and because it is not valid due to CNI stopping services.  p.6 ¶ D | "As such, CNI's claims that some of the charges were made past the termination date of the Rebiller Agreement . . . are not supported by the evidence submitted."  ECF 52 p. 19 Minimum  usage  charges  are  specifically addressed  in  Section  4  of  the  Rebiller Agreement. |
| Finance Charges:  CNI asserts that WorldCom should not have been permitted to assess finance charges against it.  Cooke alleges that Donohue agreed that balances should have been adjusted due to credits that were owed.  If credits had been applied, no finance charges would have been owed. pp. 6-7 ¶ E | "By disputing promised credits, CNI is, in effect, seeking discounts.  If the Court finds such disputes to be valid, it would be engaging in the rate-making process which is within the exclusive role of the Federal Communications Commission and contrary to the underlying principles of the filed-rate doctrine."  ECF 52 p. 19  The invoices and the Tariffs (e.g. Tariff 1 at ¶ 2.6.1.B) specifically provide for a 1.5% per month finance charge for past due amounts. |
| Credits:  CNI contends that WorldCom did not provide credits that it promised.  p. 8 ¶ F. | "[R]egardless of any inconsistent promises made by WorldCom, the filed-rate doctrine and |

---

[3] Two issues raised by CNI are not credibly at issue.  One is that MCI "doctored" an entry that "inexplicably" resulted in a $9,911 increase in the amount owed by CNI.  The second is that MCI charged for usage even after termination of services.  As to the "doctored entry" charge, the Summary Chart clearly shows the numbers supporting the $9,911 increase, which is the 5/2/1998 invoice.  On the post-termination charges, MCI has removed the charges on invoices post July 2, 1999 (other than the unused minimum charge) in order to eliminate unnecessary issues.

|  | the controlling terms of the Tariff Governing WorldCom's International Telecommunications Services (collectively "the Tariffs") prohibited CNI from enforcing discounts promised outside of the Tariffs." ECF 52 p. 18, 19 |
|---|---|
| Taxes: CNI contends there was never an agreement that WorldCom would charge taxes. p. 7 ¶ G. | In Count IV of its Counterclaim, which was dismissed, CNI asserted that WorldCom improperly charged taxes. However, the Court held that "CNI cannot enforce discounts promised outside the Tariffs." ECF 33 p. 13. "CNI's claims that some of the charges were made past the termination date of the Rebiller Agreement and that other charges were either unidentified, undetermined, <u>or not covered by the Rebiller Agreement</u> are not supported by the evidence submitted. ECF 52 p.19. Taxes are expressly contemplated in both the Tariffs (e.g. Tariff 1 ¶ 2.6.1.A) and in the Rebiller Agreement, ¶ 5.4. |
| Donahue Agreement: CNI asserts that WorldCom breached the terms of the "Donahue Agreement" under which WorldCom allegedly agreed that CNI's balance due was "zero" after a payment of $66,389. p. 7 ¶ H. | "Consideration of the Donahue Agreement is precluded by the Tariffs and therefore has no bearing on this matter" ECF 52 p. 18 |

Because each of these contentions has been rejected by the Court, CNI should not be permitted to offer evidence in support of these issues.

The law of the case doctrine has been used to exclude evidence in similar circumstances. In <u>Baer v. Chase</u>, Case No. 02-2334, 2007 WL 4165385 (D.N.J. Nov. 20, 2007) the court ruled that a party could not present evidence on claims that the court had previously rejected. Plaintiff Baer sought to recover damages from defendant Chase under various contractual and quasi-contractual theories. <u>Id</u>. at * 1. In a prior order, the court found that Baer could recover the value of the services that he provided to the defendant, but that he could not recover the value of the ideas or concepts that Baer alleged he had presented to defendant. <u>Id</u>. (citing <u>Baer v. Chase</u>, 2007 WL 1237850 at *5). Based on the law of the case doctrine, the court precluded Baer from

presenting at trial any evidence in support of his claim for damages based on the value of the ideas or concepts presented to defendant. Id. at *1. Accord United States v. Quality Built Constr., 358 F.Supp.2d 487, 490 (E.D.N.C. 2005) (granting motion in limine to exclude evidence of community housing standards because such evidence was irrelevant in light of the court's prior ruling that the ground-floor apartments constructed by the defendant violated the Fair Housing Act); Niver v. Travelers Indem. Co. of Illinois, 433 F.Supp.2d 968, 991-92 (N.D. Iowa 2006) (excluding evidence by insurance company that plaintiff should have pursued penalty benefits for workers' compensation claim where court had previously ruled that plaintiff was not required to seek penalty benefits).

Here, the evidence CNI seeks to offer must be excluded. The Court has already correctly rejected the very contentions that CNI's proffered evidence allegedly supports. Permitting such evidence would essentially reopen that which has already been decided. See Manley, 2007 WL 4233013 at *3. The Court should adhere to the law of the case doctrine, continue to give effect to its prior rulings (as outlined above), and preclude CNI the arguments and evidence as stated in the pretrial order.

## CONCLUSION

For these reasons, MCI request that the Court preclude CNI from offering any evidence, testimony or argument regarding the matters set forth in Defendant's State of Controverted Facts contained in the draft Pretrial Order.

Dated this 13 day of February, 2008.

Respectfully submitted,


STINSON MORRISON HECKER LLP




By:   */s/ Mark A Shaiken*_____
          Mark A. Shaiken, Esq.
          Andrew W. Muller, Esq.
          1201 Walnut Street, Suite 2800
          Kansas City, MO  64106
          (816) 842-8600 – Telephone
          (816) 691-3495 – Facsimile

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

     I hereby certify that on February 13, 2008, I electronically filed the foregoing with the Clerk of the Bankruptcy Court using the CM/ECF system, which sent notification of such filing to all parties receiving electronic means, and by email to:

     W. Mark Mullineaux, Esq.
     794 Penllyn Pike
     Blue Bell, PA 19422
     Attorneys for the Defendant


     */s/ Mark A Shaiken*
     Attorney for Plaintiff